[Cite as *State v. Garcia-Toro*, 2019-Ohio-5336.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                         :

    Plaintiff-Appellee,          :

                                        No. 107940

v.                                     :

CARLOS GARCIA-TORO,                    :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 26, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-621593-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Maxwell M. Martin and Joanna Lopez-Inman, Assistant Prosecuting Attorneys, *for appellee.*

John P. Parker, *for appellant.*

RAYMOND C. HEADEN, J.:

{¶ 1} Defendant-appellant Carlos Garcia-Toro ("Garcia-Toro") appeals from his convictions and sentence for aggravated murder and attempted murder. For the reasons that follow, we affirm.

**Procedural and Substantive History**

{¶ 2} On March 9, 2016, 22-year-old victim Jose Reyes ("Jose") was shot and killed upon leaving work shortly after 6 p.m. Jose and his 15-year-old nephew, Efrain Garcia, Jr. ("Efrain") worked at an auto shop on West 43rd Street in Cleveland, Ohio. Jose and Efrain left work together on the date of the incident because Jose was going to give Efrain a ride home. When Jose's car would not start, Efrain got out of the car to check its battery while Jose remained in the driver's seat. As Efrain started to get back into the vehicle on the passenger side, he noticed a man wearing black clothing and a ski mask approach the car. The man fired multiple shots into the car, killing Jose and shooting Efrain in the leg. The shooter fled on foot southbound on West 43rd and then turned east onto Newark Avenue, running into the yard located at 4221 Newark Avenue, Garcia-Toro's grandmother's house.

{¶ 3} Efrain's father, Efrain Garcia, Sr. ("Efrain, Sr.") also worked at the auto shop with Jose and was still there when Jose and Efrain left that day. He heard gunshots and screams and saw Jose start to run and then collapse to the ground.

{¶ 4} Officers responded to the scene and observed one deceased victim, Jose. Officers proceeded to talk to Efrain and other people at the scene in an attempt to identify a possible suspect. Detective Timothy Entenok ("Detective Entenok") was the detective assigned to the case. He spoke with various people at the scene and eventually obtained cell phone video footage of the presumed shooter fleeing the scene after the shooting, as well as video surveillance footage from two nearby houses.

{¶ 5} Jadiris DeJesus ("Jadiris") is Efrain's mother and Jose's sister. Shortly after Jose's murder, Garcia-Toro's sister, Noemi Garcia ("Noemi") reached out to one of Jadiris's other brothers, Edwin Reyes, via Facebook Messenger. Jadiris then reached out Noemi within a week of Jose's murder. Noemi claimed to know the name of the person who killed Jose, and Jadiris made plans over Facebook Messenger to meet Noemi in person. Jadiris and Noemi met in the parking lot of a Walmart store. Jadiris recorded the half-hour conversation and subsequently sent the recording to the Cleveland Police Department.

{¶ 6} Subsequently, Garcia-Toro reached out to Jadiris himself. On one occasion, Garcia-Toro called Jadiris, and the rest of their communications took place through Facebook. Garcia-Toro sent Jadiris photos of himself, and subsequently the two video chatted on Facebook messenger. Garcia-Toro used a Facebook account under the name Gabriel Ruiz. At one point, police arrested Garcia-Toro's brother for Jose's murder; during a call with Jadiris, Garcia-Toro said police "had the wrong guy." Police subsequently secured an arrest warrant for Garcia-Toro, and he was arrested on September 14, 2017, in Columbus, Ohio. At the time, Garcia-Toro was using the alias Edwin Sayan.

{¶ 7} On September 25, 2017, the Cuyahoga County Grand Jury indicted Garcia-Toro on one count of aggravated murder, one count of murder, four counts of felonious assault, one count of attempted murder, and one count of having weapons while under disability. With the exception of having weapons while under disability, each of the counts carried one- and three-year firearm specifications.

{¶ 8} On July 23, 2018, the state filed a motion in limine to exclude expert testimony from Amanda Hubbard ("Hubbard"). Hubbard was a private investigator hired by Garcia-Toro to review all of the social media and digital evidence collected by the state in connection with his case. On August 2, 2018, the court held a hearing on the state's motion in limine to exclude Hubbard's expert testimony. The court granted the motion in part, finding that Hubbard was precluded from testifying with respect to her opinions as to circumstantial evidence linking Garcia-Toro to social media accounts, but she would be permitted to testify as to the facts of her investigation.

{¶ 9} Garcia-Toro waived his right to a jury trial as to the having weapons while under disability count, and the case proceeded to a jury trial on the remaining seven counts on September 24, 2018. The state called 12 witnesses. Responding Officer Dymphna O'Neill and paramedic Michael Bank testified as to their response to the crime scene. Detective Darren Robinson testified as to his documentation of the crime scene and collection of evidence from the scene. Efrain and Efrain, Sr. both testified as to their accounts of the murder. Jadiris testified that she received a call about the murder and came to the scene. Jadiris also testified at length about her communications with an individual she believed to be Garcia-Toro following Jose's murder. One of Jadiris's brothers, Jonathan "J.D." DeJesus ("J.D."), testified as to his communications with this individual as well. Cuyahoga County Medical Examiner Dr. Joseph Felo ("Felo") testified as to Jose's manner and cause of death,

and Cuyahoga County Forensic Scientist Lisa Przepyszny testified as to the trace evidence report that was prepared in this case.

{¶ 10} Ron Mansour ("Mansour") testified that he was at a friend's house near the scene of the murder on March 9, 2016, when he heard gunshots. Shortly thereafter, Mansour heard emergency vehicles arrive at the scene, and he observed a Hispanic male who appeared to be in his early twenties running down the street. Mansour testified that from where he was on his friend's porch, he heard this young man tell someone that he had to stop and "get rid of the gun." Edwin Rivera testified that he was friends with Jose and used to work at the auto shop. On the date of the murder, shortly after Jose and Efrain left the shop, Rivera stopped by to talk to Efrain, Sr. He was at the shop when he heard gunshots and witnessed Efrain running back to the shop saying that Jose had been shot. Finally, Detective Entenok testified as to his investigation in this case, including his investigation of communications between Jadiris, J.D., and the individual they believed to be Garcia-Toro.

{¶ 11} Garcia-Toro called Hubbard and Brian Juzman ("Juzman"), a pastor at a church in Connecticut, as witnesses. The state made an oral motion to dismiss the charge of having weapons while under disability, and the court granted that motion.

{¶ 12} On October 4, 2018, the jury returned a guilty verdict on all seven counts and corresponding specifications. The court held a sentencing hearing on November 1, 2018. The court stated that it had reviewed the presentence

investigation report and heard from the prosecutor, defense counsel, Garcia-Toro, and several members of the victims' family. Counts 1, 2, 3, and 4 merged for sentencing, and Garcia-Toro received a sentence of 33 years to life on Count 1 (aggravated murder). Counts 5, 6, and 7 merged for sentencing, and Garcia-Toro received a sentence of 14 years on Count 5 (attempted murder). The court ordered the sentences to be served consecutively for an aggregate term of 47 years to life.

{¶ 13} Garcia-Toro appeals, presenting the following assignments of error for our review:

> I. The appellant was denied conflict-free counsel under the Sixth, Eighth, and Fourteenth amendments of the federal Constitution and Art. I Section 10 of the Ohio Constitution.
>
> II. The prosecutor improperly elicited testimony about the timing of the Notice of Alibi in violation of the [Sixth, Eighth, and Fourteenth] Amendments of the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.
>
> III. The State failed to authenticate the Facebook account of Gabriel Ruiz as belonging to or being utilized by the appellant in violation of the Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution and *State v. Gordon*, 2018-Ohio-2292 (par. 69-72) and it otherwise contained improper other acts evidence contrary to Evid.R. 404(B) and the Fourteenth Amendment.
>
> IV. Hearsay testimony and improper argument about a meeting between Jadiris DeJesus and alleged sister of appellant deprived appellant of Due Process and a fair trial under the Fourteenth Amendment of the U.S. Constitution.
>
> V. The admission of gruesome photos of the decedent violated the Fourteenth Amendment and Evidence Rules 401-403.
>
> VI. Defense counsel were ineffective under the Sixth and Fourteenth Amendments of the U.S. Constitution.

VII. Consecutive sentences were improper under Ohio law.

VIII. The evidence supporting the identity of the shooter violates the Fourteenth Amendment.

IX. The convictions are against the weight of the evidence.

X. The cumulative errors in the trial denied appellant due process under the Ohio and U.S. Constitutions.

For ease of discussion, we will address these assignments of error out of order.

## Law and Analysis

## I. Conflict-Free Counsel

{¶ 14} In his first assignment of error, Garcia-Toro argues that he was denied conflict-free counsel in violation of his constitutional rights. At a pretrial hearing on January 26, 2018, both of the attorneys initially assigned to represent Garcia-Toro made oral motions to withdraw from the case because they had previously represented Garcia-Toro's brother, Jose, who was the first suspect arrested in the instant case, on an unrelated matter. The court granted this motion, noting that the appearance of a conflict and the potential for a conflict were too great. The court appointed two new attorneys, one of whom was an assistant Cuyahoga County public defender, to represent Garcia-Toro. At some point prior to trial, a second assistant Cuyahoga County public defender, also began to represent Garcia-Toro.

{¶ 15} On September 24, 2018, before impaneling a jury, defense counsel and the court discussed another potential conflict on the record. Two individuals were named in discovery by the state. The Cuyahoga County Public Defender's

Office had previously represented two individuals who had been named in discovery documents provided by the state in this case. Garcia-Toro's counsel informed the court that they and their supervisors believed that to the extent this presented a potential conflict, Garcia-Toro could waive the issue. The court then addressed Garcia-Toro, who informed the court that he had discussed the potential conflict with his attorneys, did not have any questions about the issue for the court, and that he was willing to waive any potential legal issue with respect to the potential conflict.

{¶ 16} Garcia-Toro now argues that he never had the benefit of conflict-free counsel throughout the proceedings and the trial court did not properly inquire about the potential conflict. Specifically, he argues that his waiver was invalid where there was no conflict-free counsel to advise him throughout the pretrial proceedings, during plea negotiations, and during the trial itself. Garcia-Toro asserts that the record makes clear that an actual conflict existed and, therefore, his convictions must be vacated. We disagree.

{¶ 17} In *Wood v. Georgia*, the United States Supreme Court held that the United States Constitution "mandates a reversal where the trial court has failed to make an inquiry even though it 'knows or reasonably should know that a particular conflict exists.'" *Wood v. Georgia*, 450 U.S. 261, 272, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981), fn. 18. Our review of the record in the instant case shows that the trial court satisfied its duty to inquire. The issue was brought to the attention of the trial court, who apparently instructed defense counsel to discuss the issue with the chief public defender and to satisfy themselves that the issue was not a potential conflict. Such

discussion occurred, and Garcia-Toro's counsel summarized the discussions on the record and informed the court that they believed Garcia-Toro could waive any potential conflict of interest. The court, upon engaging Garcia-Toro in a colloquy to determine whether he understood the potential issue and was choosing to waive any potential conflict, agreed with this assessment. This inquiry satisfied the trial court's obligations.

{¶ 18} Further, only an actual conflict of interest, and not a potential conflict of interest, amounts to a violation of the United States Constitution. *State v. Gillard*, 78 Ohio St.3d 548, 552, 679 N.E.2d 276 (1997), citing *Cuyler v. Sullivan*, 446 U.S. 335, 348-350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). For purposes of the Sixth Amendment, an "actual conflict of interest is [one] that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), fn. 5. To establish an actual conflict, a defendant must show: (1) the existence of some plausible alternative defense strategy or tactic that might have been pursued, and (2) that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. *State v. Hale*, 8th Dist. Cuyahoga No. 107646, 2019-Ohio-3276, ¶ 65, citing *Gillard* at 553. Garcia-Toro has shown neither here.

{¶ 19} One of the assistant Cuyahoga County public defenders representing Garcia-Toro at trial had previously represented two individuals named in discovery documents in this case, and another attorney worked in the same office as the assistant public defender. Nothing in the record indicates that this representation

was in any way connected to the murder of Jose Reyes. Garcia-Toro's argument attempts to call into question steps taken or not taken by defense counsel in light of this alleged conflict, such as introducing evidence that these two individuals were suspects, issuing subpoenas, and insufficiently advising Garcia-Toro. None of these attempts are successful in establishing either element of an actual conflict. The record reflects that some of the state's witnesses were cross-examined as to whether they were familiar with the names of the two individuals the assistant public defender had previously represented, and this line of questioning did not lead to any relevant testimony. Further, one of Garcia-Toro's three attorneys was unaffected by any alleged actual or potential conflict of interest, and we have no reason to conclude that he was unable to properly advise Garcia-Toro related to this issue.

{¶ 20} Finally, even to the extent that there may have been a potential conflict of interest, the record contains a valid waiver by Garcia-Toro of his right to conflict-free counsel. In order to establish an effective waiver of this right, the trial court must make a "sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right." *State v. Ricks*, 8th Dist. Cuyahoga Nos. 101198 and 101199, 2015-Ohio-414, ¶ 12, citing *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph two of the syllabus. As we discussed above, the court's inquiry here was sufficient.

{¶ 21} The court confirmed that Garcia-Toro understood his attorneys' summary of the potential issue and the discussions they had had with him and with their supervisor. The court confirmed that Garcia-Toro understood the implications

of a potential conflict of interest on his attorneys' representation of him, that he had an opportunity to discuss the issue with counsel, that he would be giving up any potential legal issue with respect to the alleged conflict, that he was not threatened or promised anything in connection with his waiver, and that he fully understood the waiver and did not have any questions. Therefore, the record reflects a valid waiver by Garcia-Toro. For these reasons, Garcia-Toro's first assignment of error is overruled.

## II. Alibi Testimony

{¶ 22} In his second assignment of error, Garcia-Toro argues that the prosecutor improperly elicited testimony regarding the timing of his notice of alibi in violation of his constitutional rights. Specifically, Garcia-Toro asserts that the prosecutor's questioning of Detective Entenok regarding when Garcia-Toro's notice of alibi was filed was improper and constituted plain error.

{¶ 23} At the end of the state's direct examination of Detective Entenok, the following exchange occurred:

> PROSECUTOR: Did you ever receive a phone call from anyone claiming that they knew the defendant was not in Cleveland, Ohio, at the time of March 9, 2016?
>
> ENTENOK: No.
>
> PROSECUTOR: When is the first time you heard an alleged alibi?
>
> ENTENOK: June of this year.
>
> PROSECUTOR: From a court filing?
>
> ENTENOK: Yes.

The prosecutor concluded direct examination, and defense counsel did not object to any of these questions or responses. Because Garcia-Toro did not object to any part of this exchange, we are limited to reviewing for plain error. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Supreme Court of Ohio has made clear that notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 24} In support of his argument, Garcia-Toro cites this court's decision in *State v. Sims*, in which we found that while it was error for the trial court to permit the prosecution to adduce evidence regarding the date that the defendant's notice of alibi was filed, it did not rise to the level of plain error requiring reversal of Sims's conviction. *Sims*, 3 Ohio App.3d 331, 334, 445 N.E.2d 245 (8th Dist.1982). We agree with Garcia-Toro that the timing of the filing of a notice of alibi is not probative of guilt and is tantamount to adducing evidence about the defendant's silence. *State v. Tolbert*, 70 Ohio App.3d 372, 381, 591 N.E.2d 325 (1st Dist.1990), citing *Sims*. We disagree that the prosecutor's direct examination of Detective Entenok amounted to plain error.

{¶ 25} The prosecutor's references to Garcia-Toro's notice of alibi was limited to a very brief exchange, and neither the prosecutor nor Detective Entenok made any inferences or further comments regarding the notice of alibi. Further,

Garcia-Toro's alibi witness was able to provide thorough testimony as to the alibi defense. Finally, in light of the other evidence presented against Garcia-Toro, we cannot conclude that this brief exchange affected a substantial right or constituted a manifest miscarriage of justice. Therefore, Garcia-Toro's second assignment of error is overruled.

### III. Facebook Account

**{¶ 26}** In his third assignment of error, Garcia-Toro argues that the state failed to properly authenticate the Gabriel Ruiz Facebook account as belonging to or being utilized by the appellant, and it otherwise contained improper other acts evidence in violation of Evid.R. 404(B). Garcia-Toro argues that given the authentication issues surrounding social media evidence, including the ability of an individual to create a fictitious account, the testimony of a biased witness — J.D. — was insufficient to authenticate the evidence in this case.

**{¶ 27}** Ohio courts have acknowledged that social media evidence creates authentication concerns because, among other things, "'anyone can create a fictitious [Facebook] account and masquerade under another person's name' and, consequently, '[t]he potential for fabricating or tampering with electronically stored information on a social networking site is high.'" *State v. Gordon*, 2018-Ohio-2292, 114 N.E.3d 345, ¶ 69 (8th Dist.), quoting *State v. Inkton*, 2016-Ohio-693, 60 N.E.3d 616, ¶ 85-86 (8th Dist.), quoting *State v. Gibson*, 6th Dist. Lucas Nos. L-13-1222 and L-13-1223, 2015-Ohio-1679, ¶ 35. While the parties in this case agree that this

challenge exists, they disagree as to the significance of this issue related to the evidence against Garcia-Toro.

{¶ 28} The admission of evidence "lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001). Therefore, our review is limited to determining whether the trial court's admission of evidence was unreasonable, arbitrary, or unconscionable. *State v. Barnes*, 94 Ohio St.3d 21, 23, 2002-Ohio-68, 759 N.E.2d 1240.

{¶ 29} Here, the state presented evidence that an individual communicated with Jose's siblings using a Facebook account under the name "Gabriel Ruiz" and admitted to having murdered Jose. This evidence took the form of screenshots of text communications, as well as screenshots of video chats. Garcia-Toro argues that the state was required to present additional evidence going to the identification of the user of the Gabriel Ruiz Facebook account, including independent evidence linking Garcia-Toro to the account, before the evidence was put before the factfinder. In response, the state argues that it presented sufficient evidence to authenticate the Facebook evidence pursuant to Evid.R. 901(A), and beyond that, the issue of who created the Gabriel Ruiz Facebook account was a question to be resolved by the factfinder.

{¶ 30} Evid.R. 901(A) provides:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

This authentication standard is liberal and may be satisfied by either circumstantial or direct evidence sufficient for the trier of fact to conclude that the evidence is what its proponent claims it to be. *Inkton*, 2016-Ohio-693, 60 N.E.3d 616, at ¶ 73, citing *State v. Pruitt*, 8th Dist. Cuyahoga No. 98080, 2012-Ohio-5418, ¶ 11. In this case, Detective Entenok testified that he obtained the Facebook evidence pursuant to a search warrant served on Facebook and personally reviewed the documents. Ohio courts have found similar authentication evidence sufficient to meet the standard in Evid.R. 901(A). *Inkton*; *State v. Howard*, 1st Dist. Hamilton No. C-170453, 2018-Ohio-3692. Therefore, we find the Facebook evidence was properly authenticated.

{¶ 31} As to the identity of the Facebook account's user, the state presented evidence from J.D. and Jadiris identifying Garcia-Toro as the person with whom they communicated on the Gabriel Ruiz Facebook account. This includes their identification of Garcia-Toro in a screenshot of a video chat between the Gabriel Ruiz Facebook account and J.D.'s Facebook account. This evidence was properly presented to the jury, and the jury was tasked with assessing the weight and credibility of this evidence. In light of the foregoing, we find no abuse of discretion in the trial court's admission of social media evidence.

{¶ 32} Garcia-Toro also argues that allowing J.D. and Jadiris to testify about "other acts" evidence contained within the Gabriel Ruiz Facebook account

constituted a violation of Evid.R. 404(B). This included threats to kill or harm members of their family. Unlike the foregoing authentication issue, which was thoroughly addressed during trial, Garcia-Toro did not object to any of the evidence he now argues violates Evid.R. 404(B). Therefore, we are confined to plain error review.

{¶ 33} Evid.R. 404(B) prohibits the introduction of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity with that character. The rule goes on to provide that such evidence may be admissible for other purposes, such as proof of motive, identity, or absence of mistake or accident. The evidence Garcia-Toro now challenges all appear to directly relate to Jose's murder and could have been introduced in order to prove his identity and the absence of mistake or accident, which are proper purposes for this evidence. Therefore, we find no plain error. Garcia-Toro's third assignment of error is overruled.

## IV. Hearsay Testimony

{¶ 34} In his fourth assignment of error, Garcia-Toro argues that the admission of alleged hearsay testimony deprived him of a fair trial. Specifically, Garcia-Toro argues that it was improper for Jadiris to testify as to the contents of her conversation with his sister, Noemi, in the Walmart parking lot.

{¶ 35} Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Following our thorough review of Jadiris's

testimony, we do not believe that any of the testimony constitutes hearsay. Jadiris testified that Noemi reached out to her brother, Edwin; that Jadiris then contacted Noemi; that the two arranged to meet in person in a Walmart parking lot; that Jadiris believed Noemi had information about who killed Jose; that the two women did in fact have this meeting; and that Noemi gave Jadiris a name. Jadiris also testified that she recorded this conversation and gave the recording to the police.

{¶ 36} Because none of this testimony constitutes inadmissible hearsay, we cannot conclude that the trial court abused its discretion in allowing Jadiris to testify about her conversation with Noemi. Garcia-Toro's fourth assignment of error is therefore overruled.

## V. Autopsy Photographs

{¶ 37} In his fifth assignment of error, Garcia-Toro argues that the admission of autopsy photographs of Jose violated the Fourteenth Amendment to the United States Constitution and Evidence Rules 401 through 403. Garcia-Toro claims that because the only contested issue in this case was the identity of the shooter, the admission of gruesome photographs of the victim constitutes plain error. We disagree.

{¶ 38} A gruesome photograph is admissible only if its probative value outweighs the danger of prejudice to the defendant. *State v. Ford*, 2019-Ohio-4539, ¶ 237, citing *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 96. Here, Jose's autopsy photos, although gruesome, served to illustrate the testimony of Felo, the Medical Examiner who testified as to the nature of Jose's

wounds and his manner of death. Therefore, we do not find plain error in their admission. Garcia-Toro's fifth assignment of error is overruled.

## VI. Consecutive Sentences

**{¶ 39}** In his seventh assignment of error, Garcia-Toro argues that the imposition of consecutive sentences was improper because the record does not support consecutive sentences.

**{¶ 40}** Pursuant to R.C. 2953.08, a reviewing court may overturn the imposition of consecutive sentences where it clearly and convincingly finds that the record does not support the sentencing court's finding under R.C. 2929.14(C)(4), or the sentence is otherwise contrary to law.

**{¶ 41}** R.C. 2929.14(C)(4) requires a sentencing court to make certain findings before imposing consecutive sentences. First, the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. R.C. 2929.14(C)(4). The court must also find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. *Id.* Finally, the court must find any one of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the

courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4). Beyond making these findings on the record, the court must also incorporate the findings into its sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 1.

{¶ 42} At sentencing, the court stated that there was an open warrant for Garcia-Toro's return to Puerto Rico for stealing a vehicle, meaning that the instant crimes were committed while he had a separate case pending and "was a fugitive from justice." The court stated that the murder in this case was "one of the more cruel and cold-blooded murders" it had seen, noting that the entire community suffered as a result of a brazen murder that occurred in the middle of the day. The court went on to find that consecutive sentences were necessary to protect the public and punish the offender, that consecutive sentences were not disproportionate to the seriousness of Garcia-Toro's conduct, that the crime was committed while a separate criminal matter was pending, and that the harm was so great or unusual that a single term would not adequately reflect the seriousness of the conduct. In light of these findings by the trial court, we do not find by clear and convincing evidence that the consecutive sentence findings are unsupported by the record. Therefore, Garcia-Toro's seventh assignment of error is overruled.

## VII. Ineffective Assistance of Counsel

{¶ 43} In his sixth assignment of error, Garcia-Toro argues that he received ineffective assistance of counsel. In support of this assignment of error, he reiterates his arguments from the foregoing assignments of error, arguing that his counsel was ineffective for (a) representing Garcia-Toro in spite of an alleged conflict of interest; (b) failing to object to allegedly improper alibi questions the prosecutor asked the detective; (c) failing to object to the authenticity of the Facebook records; (d) failing to object to alleged hearsay testimony; (e) failing to object to the admission of photos of Reyes; and (f) failing to object to the imposition of consecutive sentences. Further, Garcia-Toro argues that the cumulative effect of these errors deprived him of a fair trial.

{¶ 44} To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance at trial was seriously flawed and deficient and fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed2d 674 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 687-688.

{¶ 45} In deciding a claim of ineffective assistance, reviewing courts indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance, and defendants must therefore overcome the presumption

that the challenged action might be considered sound trial strategy. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), citing *Strickland*.

{¶ 46} Because we found no error regarding any of counsel's allegedly deficient conduct, we cannot conclude that Garcia-Toro's counsel was deficient. Therefore, he has failed to establish the first prong of the *Strickland* test, and his claim for ineffective assistance of counsel necessarily fails. Garcia-Toro's sixth assignment of error is overruled.

## VIII. Sufficiency of the Evidence

{¶ 47} In his eighth assignment of error, Garcia-Toro argues that the evidence supporting his conviction, and specifically the evidence as to the shooter's identity, violates the Fourteenth Amendment. Garcia-Toro challenges the sufficiency of the evidence supporting his conviction.

{¶ 48} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would support a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶ 49}** Garcia-Toro emphasizes the absence of any eyewitness evidence or physical evidence that he was the shooter. Neither physical evidence nor eyewitness testimony is required to establish a defendant's guilt beyond a reasonable doubt. Ohio courts have consistently held that a defendant may be convicted solely on the basis of circumstantial evidence. *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988), citing *State v. Kulig*, 37 Ohio St.3d 157, 309 N.E.2d 897 (1974); *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), *cert. denied Hankerson v. Ohio*, 459 U.S. 870, 103 S.Ct. 155, 74 L.Ed.2d 130 (1982). Circumstantial evidence is equally probative as direct evidence. *Id.*, citing *State v. Griffin*, 13 Ohio App.3d 376, 377, 469 N.E.2d 1329 (1st Dist.1979).

**{¶ 50}** Here, multiple witnesses testified that Garcia-Toro had admitted to killing Jose, and that these statements included details about what Jose was doing when he was killed and how exactly he was killed. These statements correspond with Efrain's account of the events. Additionally, the suspect appearing in video footage of the area near the murder immediately following matched the description given by Efrain and was identified at trial by other witnesses as Garcia-Toro. Viewing this evidence in the light most favorable to the state, sufficient evidence was presented to support Garcia-Toro's convictions. Therefore, his eighth assignment of error is overruled.

## IX. Manifest Weight of the Evidence

**{¶ 51}** In his ninth assignment of error, Garcia-Toro argues that his convictions are against the manifest weight of the evidence. In support of this

assignment of error, he points to the biased testimony from Jose's family members, in addition to reiterating his arguments regarding the sufficiency of the evidence.

{¶ 52} Unlike a challenge to the sufficiency of evidence, a manifest weight challenge attacks the quality of the evidence and questions whether the state met its burden of persuasion at trial. *State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387, ¶ 25, citing *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. When reviewing a manifest weight challenge, a court reviews the entire record, weighing all evidence and reasonable inferences and considering the credibility of the witnesses, to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶ 53} After a thorough review of the record, we conclude that Garcia-Toro's convictions are not against the manifest weight of the evidence. While we are mindful of some of the witnesses' familial relationships to the victims and the inherent bias that may create, we cannot summarily discount their testimony based on their connection to the victims. This is especially true in light of the documentary evidence, such as Facebook activity records that corroborate the witnesses' testimony. While Garcia-Toro's argument implicitly attacks the credibility of J.D. and Jadiris, we find nothing in the record that causes us to question their credibility to such a degree as to completely, or even significantly, negate the value of their testimony. Finally, although Garcia-Toro provided an alibi witness who testified that he was likely in Connecticut the day before and the day after the shooting, he

provided no specific alibi as to his whereabouts on the day of the shooting. Upon considering the totality of the evidence in this case, together with reasonable inferences therefrom, we cannot conclude that the trier of fact lost its way. Garcia-Toro's convictions are not against the manifest weight of the evidence, and his ninth assignment of error is overruled.

## X. Cumulative Error

{¶ 54} In his tenth and final assignment of error, Garcia-Toro argues that the cumulative effect of the foregoing assignments of error is such that they denied him due process. However, because none of Garcia-Toro's claimed errors has merit, the doctrine of cumulative error is inapplicable. *Berea v. Timm*, 8th Dist. Cuyahoga No. 107740, 2019-Ohio-2573, ¶ 42, citing *State v. Obermiller*, 8th Dist. Cuyahoga No. 101456, 2019-Ohio-1234, ¶ 52, citing *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 132. Therefore, Garcia-Toro's tenth assignment of error is overruled and his convictions and sentence are affirmed.

{¶ 55} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

SEAN C. GALLAGHER, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR