[Cite as *State v. Kidd*, 2020-Ohio-4994.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 109126 |
| v. | : | |
| LAMEER KIDD, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
**RELEASED AND JOURNALIZED:** October 22, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-640098-A

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carson Strang, Assistant Prosecuting Attorney, *for appellee.*

Jerome Emoff, *for appellant.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant Lameer Kidd ("Kidd") appeals his conviction and sentence. We find Kidd voluntarily forfeited his right to be present during the rendering of the jury verdict, Kidd was properly convicted of aggravated burglary,

and the trial court did not violate Kidd's right to a fair trial where the jury heard evidence concerning the violation of a protection order. We find, however, that the trial court erred in instructing the jury on the lesser included offense of assault and vacate that conviction. We therefore affirm in part, reverse in part, and remand this matter to the trial court.

## I. Procedural History

{¶ 2} On May 21, 2019, Kidd was charged in a multiple-count indictment as follows: Count 1 — aggravated burglary in violation of R.C. 2911.11(A)(1); Count 2 — domestic violence in violation of R.C. 2919.25(A); Count 3 — abduction in violation of R.C. 2905.02(A)(1); Count 4 — drug possession in violation of R.C. 2925.11(A); and Count 5 — violating a protection order in violation of R.C. 2919.27(A)(1). The indictment listed the predicate offense in Count 1 as "domestic violence and/or abduction."

{¶ 3} Prior to the start of trial, the prosecutor moved, without objection, to amend Count 1 of the indictment to include assault, now stating the predicate offense as "domestic violence and/or abduction and/or assault." And at the end of trial, at the prosecutor's request, the court instructed the jury on "the lesser included offense of assault" in violation of R.C. 2903.13(A) on Count 2.

{¶ 4} The indictment stemmed from an incident at the Forever Children's Home in Pepper Pike, Ohio, where Tramaine Bridges, the victim, worked. Prior to the commencement of trial, the state moved to have the victim declared a material

witness because she refused to appear at trial. The trial court granted the motion, over the defense's objection, and a warrant was issued for Bridge's arrest.

{¶ 5} On August 5, 2019, the case proceeded to trial. The state presented the testimony of Bridges, Debra Johnson, and Tonya Brewer, the victim's coworkers at the home; Pepper Pike police officers Anthony Bekesz and Sergeant Karl Dietz; and Euclid police officer Daniel Ferritto. At the close of the evidence, the state moved to dismiss Count 5, violation of a protection order.

{¶ 6} When the court was notified that the jury had reached a verdict, it notified the state and Kidd's trial counsel. Kidd failed to return to court for the announcement of the verdict. The trial court then took the verdict from the jury, finding the following: Count 1, aggravated burglary, guilty; Count 2, the lesser included offense of assault, guilty; Count 3, abduction, guilty; and Count 4, possession of drugs, not guilty.

{¶ 7} Defendant was later apprehended pursuant to a bench warrant. The trial court held a sentencing hearing, during which it heard from Bridges, Kidd's family members, Kidd, and the prosecutor. The state argued against merger of any of the aggravated burglary and abduction counts, stating the crimes were committed separately. The court imposed the following sentence: Count 1 — a prison sentence of 10 years minimum to 15 years maximum; Count 2 — time served; and Count 3, a prison sentence of 2 years. The court found that Counts 1 and 3 did not merge for sentencing and ordered the sentences in Counts 1 and 3 to be served consecutively, for an aggregate prison sentence of 12 to 17 years.

{¶ 8} Kidd appeals his conviction and sentence, assigning the following errors for review:

I.  The trial court violated Appellant's right to be present at all stages of his trial.

II.  The trial court erred in failing to merge Counts 1 and 2.

III.  Assault is not a lesser included offense of domestic violence.

IV.  Appellant did not receive a fair trial because the jury heard evidence on a charge that had no legal or factual support.

{¶ 9} For the reasons that follow, we overrule appellant's first and fourth assignments of error, sustain in part his third assignment of error, find as moot his second assignment of error, and remand this case to the trial court.

## II. Trial Testimony

{¶ 10} Debra Johnson worked with the victim, Tramaine Bridges, at the Forever Children's Home where she, along with five or six other employees, care for adult residents with special needs.  The residents live at the home and require 24-hour care. Johnson testified that on a Sunday in April 2019, she was working with Bridges and Tonya Brewer.  Johnson stated that she was aware Bridges and Kidd were dating and Kidd would sometimes drop her off and pick her up from work.  On that Sunday morning, she saw Kidd's car parked in front of the house, which she described as a "red or burnt orange Dodge Dart [with] tinted windows."

{¶ 11} She further testified that when Kidd arrived, she was having breakfast, Brewer was in the kitchen, and Bridges was in the living room with three of the home's residents, when she heard Bridges' phone "going off" and then become quiet.

She then heard a knock at the front door; Bridges went to the door, opened it for a few seconds, "said a few words," closed the door, and returned to the living room sofa.

{¶ 12} Shortly thereafter, Johnson heard Kidd knocking on the window. He knocked harder, "banging" on the window. She approached Kidd at the window to tell him to stop, and she became frightened by the way he looked at her. She returned to the table, and Kidd moved to the door. She testified that Kidd then kicked the door several times until he kicked it open. Bridges went into the kitchen, and Kidd followed her and hit Bridges in the head with his fist, knocking her to the floor. He then grabbed her by her hair; said, "Bitch, I'm going to beat your ass"; and dragged her from the kitchen. He took her through the living room, out the front door, and "threw her in the car." Bridges was yelling, "Let me go. Stop!"

{¶ 13} Tonya Brewer testified that she was working at the Forever Children's Home on the morning of April 28, 2019. She said that at some point during the shift change, she heard someone knocking on the window by the front door and then saw Kidd kick open the front door. Brewer immediately began moving the residents to safety. After the residents were secured, she phoned 911. Brewer saw Kidd use his hand to hit Bridges, causing her to fall to the floor and saw Kidd drag Bridges out of the house by her hair while Bridges was "kicking and screaming, asking for help." She heard Kidd tell Bridges to "shut up." Brewer reported to the 911 operator that Kidd, dragged "her coworker out of the house," and that he was "beating on her."

{¶ 14} Officer Anthony Bekesz, from the Pepper Pike Police Department, responded to a call for "some type of assault" from the Forever Children's Home. On his way to the home, Officer Bekesz encountered Bridges on South Woodland Road near the Park Synagogue. He testified that she was coming toward him in obvious distress; she was "sobbing," her clothes were torn, she had no shoes on, and had cuts on her wrists. Officer Bekesz placed her in his patrol car to get her out of the cold. Later, she was transported to the hospital where the officer spoke to her about the incident.

{¶ 15} Tramaine Bridges testified that she has been in a "great" relationship with Kidd for approximately two and a half years and they stayed at each other's houses. Bridges testified that she and Kidd shared a car, a Dodge Dart, and Kidd would often drop her off at work. She said that in April 2019, she was working at the Forever Children's Home. On the evening of April 27, 2019, she and Kidd had a disagreement and Kidd became angry because of a text she received from a male friend. She went to work that evening and did not exchange phone calls or texts with Kidd during the night. The next morning, Kidd arrived at the home to pick her up when it was time for her to leave. She testified that he was not allowed into the home. Bridges was sitting on the couch in the living room when she heard Kidd knocking on the window. She went to the front door and told Kidd that she would be out soon and that he should stop knocking on the window. Kidd stayed in the car momentarily but returned to the window where he began knocking again. She testified that Kidd then kicked the front door in.

{¶ 16} Bridges went into the kitchen where Kidd grabbed her arm and caused her to fall to the ground. She said that Kidd "tried to" strike her. According to Bridges, Kidd pulled her by her arm out of the home and into the car. She admitted that she told Kidd to "get off of [her]." They drove away, and at some point, she exited the vehicle on a nearby street where she encountered a police officer. She was transported to a hospital for treatment, saying she was treated for "a couple of scratches" with "a couple of Band-Aids." Bridges identified pictures of her injuries from that day, showing scratches and bruising to her elbows and arm from where Kidd grabbed her.

{¶ 17} Bridges testified that a couple days after the incident, members of the Pepper Pike Police Department obtained a protection order on her behalf. She stated, however, that she spoke with Kidd many times after the incident and he was apologetic. She also testified that she spoke with Kidd after he was arrested and, despite the protection order, she saw Kidd at a nightclub on the Friday after the incident. She further testified Kidd knew there was a protection order in place. Bridges told the jury that she did not want to testify against Kidd and that she did not appear the first day of trial.

{¶ 18} Detective Karl Dietz, with the Pepper Pike Police Department, testified that he initiated the paperwork for a protection order against Kidd. The detective filed the protection order on April 29, 2019. He interviewed Bridges the next day, advising her that there was a protection order against Kidd. The detective spoke with Kidd on the phone, advising him that there was a protection order

against him, reviewed the protection order with him, discussed the charges against him, and told him he should stay away from Bridges.

{¶ 19} Detective Dietz also suggested Kidd turn himself in, but Kidd declined to do so. Euclid Police Officer Daniel Ferritto testified that on May 4, 2019, he responded to a call for assistance regarding a possible stolen vehicle. The vehicle was a red Dodge Dart, and Bridges and Kidd were in the vehicle. Officer Ferritto learned that there was a warrant for arrest and a protection order entered against Kidd. He arrested Kidd on the warrant. He further testified as to a search of the car and the recovery of suspected drugs that formed the basis for the drug possession charge for which Kidd was acquitted at trial.

### III. Right to be Present for Trial

{¶ 20} In his first assignment of error, Kidd contends that the trial court violated his right to be present for all stages of his trial when the jury verdict was read in court, outside his presence. Kidd argues, "[I]t is not entirely clear whether his absence was voluntary."

{¶ 21} A criminal defendant has the right to be present at every stage of the criminal proceedings. Article I, Section 10, Ohio Constitution; *State v. Sandidge*, 8th Dist. Cuyahoga No. 109277, 2020-Ohio-1629, ¶ 6, citing Crim.R. 43(A). Crim.R. 43(A) specifically provides that "[t]he Defendant shall be present at the arraignment and every stage of the trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules." However, the rule contemplates a defendant's absence and provides

that "[i]n all prosecutions, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the verdict."

**{¶ 22}** A defendant's right to be present may be waived by his or her own actions. *State v. Meade*, 80 Ohio St.3d 419, 421, 687 N.E.2d 278 (1997). "[W]hen a defendant voluntarily absents himself from trial after the jury has been sworn, the trial may proceed to its conclusion." *State v. Chancey*, 8th Dist. Cuyahoga Nos. 75633 and 76277, 2000 Ohio App. LEXIS 575, 11 (Feb. 17, 2000). "The voluntariness of an accused's nonappearance is an issue of fact and the trial court is permitted to find that a defendant's absence was voluntary when there is un-refuted evidence that the accused was aware of his obligation to attend the court proceedings." *Id.*

**{¶ 23}** Kidd was present when trial commenced, present through testimony and presentation of evidence, but when the jury reached a verdict, Kidd did not return. At that time, the court notified the parties that it was contacted by the sheriff, and told them:

> The Court was * * * informed about an hour ago that the defendant appeared to be tampering with his bracelet. He's on electronic home monitoring, GPS monitoring. He was in the Flats on Columbus Road, and it appeared that the deputy sheriffs got a signal that he was tampering with his bracelet. So, the deputies went to the location where it was signaled, and they found the bracelet but not the defendant. So, it appears that he cut his bracelet.

**{¶ 24}** After a discussion off the record, the trial court reiterated that the sheriff's department received a signal that Kidd was tampering with his GPD

monitoring device, and when deputies discovered the bracelet in the Flats, Kidd was not there.  In response, defense counsel explained:

> I did have a conversation with Mr. Kidd and told him that I think the jury is back.  I may not have mentioned verdict, but I said the jury is back, we should get over to the courthouse as fast as you can.  Where are you?  Conversation was that he was outside the Justice Center.  I said it will take me about five minutes to walk over there, I'll meet you there, and we'll go from there.

{¶ 25} Thereafter, he confirmed Kidd's family had been present for the entire trial and they, too, were not present for the verdict.

{¶ 26} Having parted from his monitoring bracelet and failing to meet his attorney at the courthouse for the verdict, there is nothing to suggest that Kidd's failure to appear was involuntary.  Further, at sentencing, Kidd admitted to having removed his monitoring bracelet and apologized for "duping" people, stating he wanted only to say goodbye to his family.

{¶ 27} Because the trial court properly found Kidd's absence voluntary, it committed no error by proceeding with the verdict without Kidd present.

{¶ 28} Kidd's first assignment of error is overruled.

### IV.  Amended Indictment

{¶ 29} We address Kidd's second and third assignments of error together.  In his third assignment of error, Kidd contends that the amendment to Count 1 was improper and therefore "invalidates the entire verdict on Count 1."  In support, Kidd argues that the assault charge was added to Count 1 because it was a lesser included offense of domestic violence, and because assault is not a lesser included offense of

domestic violence, the amendment was improper. He further argues under this assignment of error that he could not be convicted of the lesser included offense of assault in Count 2. In his second assignment of error, Kidd argues that the trial court erred by sentencing him on both aggravated burglary and assault where they are allied offenses of similar import.

### 1. Amendment to Count 1 of the Indictment, Aggravated Burglary

{¶ 30} Kidd did not object to the amendment of the indictment or the inclusion of assault as a lesser included offense in the jury instructions. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." We have stated that "notice of plain error 'is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Garcia-Toro,* 8th Dist. Cuyahoga No. 107940, 2019-Ohio-5336, ¶ 23, a*ppeal not accepted,* 158 Ohio St.3d 1467, 2020-Ohio-1393, *cert. pending,* No. 20-5569, quoting *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 31} Prior to trial, the trial court amended the aggravated burglary charge to include assault as one of several crimes charged. Crim.R. 7(D) allows that "[t]he court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." Because the

underlying offense in an aggravated burglary indictment need not be specified in the indictment, the amendment was not error. As explained by the Ninth District Court of Appeals:

> For example, the elements of an offense underlying the charged offense, e.g., "any criminal offense" underlying a charge of aggravated burglary, are not essential elements of the aggravated burglary; rather, the specific underlying offense is merely a fact that must be proved to establish the essential element that a trespasser had purpose to commit in the structure "any criminal offense." *See State v. Lynn*, 129 Ohio St.3d 146, 2011-Ohio-2722, 950 N.E.2d 931, ¶ 16, citing *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 71.

*State v. Schmolz*, 9th Dist. Medina No. 12CA0004-M, 2013-Ohio-1220, ¶ 10.

{¶ 32} In this case, Count 1 of the indictment alleges Kidd

> did, by force, stealth, or deception, trespass, as defined in section 2911.21(A)(1) of the Revised Code, in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when Tramaine L. Bridges, a person other than the accomplice, was present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure a criminal offense, to wit: Domestic Violence and/or Abduction, 2919.25 and/or 2905.02, and the offender recklessly inflicted, or attempted or threatened to inflict physical harm on Tramaine L. Bridges.

The indictment tracks the language of R.C. 2911.11(A)(1), supplementing the language with the offenses that Kidd is alleged to have the purpose to commit in the structure.

{¶ 33} Domestic violence was alleged as one of the offenses that Kidd had the purpose to commit when he entered the home. As recognized in *State v. Daugherty*, 166 Ohio App.3d 551, 2006-Ohio-1133, 852 N.E.2d 202, ¶ 4 (2d Dist.),

all elements of assault under R.C. 2903.13 are contained within the offense of domestic violence. As such, even though it is not necessary to delineate underlying offenses in an aggravated burglary charge, such was done and Kidd was on notice the state alleged both an abduction and an assault on a family member as underlying offenses. The amendment inserting the underlying offense of assault was proper under Crim.R. 7(D) where the nature and identity of the offense charged, aggravated burglary, was not changed and where Kidd was on notice the state alleged an assault as one of the offenses it sought to prove at trial.

{¶ 34} Accordingly, Kidd's argument that his conviction for aggravated burglary should be vacated is not well taken.

2. Amendment to Count 2 of the Indictment, Domestic Violence

{¶ 35} R.C. 2954.74 provides that a jury may find a defendant not guilty of a lesser included offense of any charged offense "[w]hen the indictment or information charges an offense, including different degrees, or if other offenses are included within the offense charged, the jury may find the defendant not guilty of the degree charged but guilty of an inferior degree thereof or lesser included offense."

{¶ 36} In Count 2 of the indictment, Kidd was charged with a violation of R.C. 2919.25(A), domestic violence, a misdemeanor of the first degree. The trial court allowed the jury to consider the "lesser" included offense of assault in violation of R.C. 2903.13, also a misdemeanor of the first degree. R.C. 2919.25(A) prohibits a person from "knowingly caus[ing] or attempt[ing] to cause physical harm to a family

or household member." R.C. 2903.13(A) prohibits a person from "knowingly caus[ing] or attempt[ing] to cause physical harm to another or to another's unborn." The commission of the offense of domestic violence incorporates the elements of assault under R.C. 2903.13(A), as the offense of domestic violence cannot be committed without committing the offense of assault. *Daugherty*, 166 Ohio App.3d 551, 2006-Ohio-1133, 852 N.E.2d 202, ¶ 4.

{¶ 37} However, the test of whether an offense is a lesser included offense is not to simply consider the elements of the offenses.

> In determining whether one offense is a lesser included offense of another, a court must consider whether: (1) "one offense carries a greater penalty than the other," (2) "some element of the greater offense is not required to prove commission of the lesser offense," and (3) "the greater offense as statutorily defined cannot be committed without the lesser included offense as statutorily defined also being committed."

*State v. Johnson*, 8th Dist. Cuyahoga No. 108311, 2020-Ohio-568, ¶ 25, quoting *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, paragraph two of the syllabus, clarifying *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988).

{¶ 38} Where the domestic violence offense is charged as a felony offense and the assault is a misdemeanor offense, such amendment has been found to be proper. *E.g., State v. Quiles*, 8th Dist. Cuyahoga No. 84293, 2005-Ohio-388, ¶ 17. In contrast, the inclusion of assault as a lesser included offense is improper where the domestic violence and assault charges are of the same degree. *State v. Scott*, 12th Dist. Butler No. CA2008-06-149, 2009-Ohio-1450; *Daugherty* at 553; *State v.*

*Meese*, 5th Dist. Tuscarawas No. 87AP120096, 1988 Ohio App. LEXIS 1467 (Apr. 18, 1988).

{¶ 39} In this case, the amendment is plain error under the test set forth in *Evans, supra*. We find plain error where the amendment to Count 2 of the indictment and the instruction on a lesser included offense resulted in a conviction. Accordingly, Kidd's argument that the court could not instruct the jury on misdemeanor assault as a lesser included offense of misdemeanor domestic violence is well taken, and his conviction of assault is vacated.

{¶ 40} Our resolution of the third assignment of error renders moot Kidd's second assignment of error alleging that his assault conviction should merge with the abduction conviction.

V. Evidence of Violation of a Protection Order

{¶ 41} In his final assignment of error, Kidd contends that he did not receive a fair trial because the jury heard evidence on a charge that had no legal or factual support. He argues in support that the state presented no evidence that the protection order in Count 5 was ever served on him, the state knew the protection order was never served, and the state should therefore have dismissed the charge before trial began, not after it rested. And because the jury heard information regarding the protection order, Kidd asserts, the jury was prejudiced.

{¶ 42} At trial, the state presented the testimony of Detective Dietz, who testified that he spoke with Kidd, advising him that there was a protection order against him; reviewed the protection order with him; and advised Kidd that he

should stay away from Bridges. On cross-examination, the detective conceded that the protection order was not physically served upon the defendant. At the close of the state's evidence, the prosecutor moved to dismiss Count 5, violating a protection order, stating as follows:

> At this time, the state is going to make an oral motion to dismiss Count 5. And just for the record, I guess to put some reasoning on there, is that the state reads that count as to require service. I think defense counsel has elicited testimony that there was no service made to the defendant, so the state in good faith can't go forward on that count.

{¶ 43} Kidd was charged under R.C. 2919.27(A)(1) with violating a protection order. Subsection (D) of R.C. 2919.27 was effective September 27, 2017, to provide:

> [I]t is not necessary for the prosecution to prove that the protection order or consent agreement was served on the defendant if the prosecution proves that the defendant was shown the protection order or consent agreement or a copy of either or a judge, magistrate, or law enforcement officer informed the defendant that a protection order or consent agreement had been issued, and proves that the defendant recklessly violated the terms of the order or agreement.

2017 Am.Sub. S.B. 7.

{¶ 44} The lack of perfected service of the protection order will not preclude prosecution for a violation of R.C. 2919.27(A) as long as the prosecution can show, for example, that a law enforcement officer informed the defendant that a protection order had been issued and it proves that the defendant recklessly violated the terms of the order. *State v. P.J.M.*, 8th Dist. Cuyahoga No. 109017, 2020-Ohio-3805, ¶ 24, citing R.C. 2919.27(D).

{¶ 45} Detective Dietz testified he informed Kidd that a protection order was issued against him and reviewed the terms of the protection order with Kidd. The state presented other evidence that established Kidd ignored the protection order. In dismissing Count 5, the state mistakenly believed it had to prove perfected service upon the defendant. *Id.* at ¶ 24. It was therefore not error for the jury to hear evidence concerning Kidd's violation of a protection order.

{¶ 46} Kidd's fourth assignment of error is overruled.

{¶ 47} Judgment affirmed in part, reversed in part, and remanded for the trial court to issue a new judgment reflecting that Kidd's assault conviction has been vacated.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

MARY J. BOYLE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR