[Cite as *State v. Nye*, 2013-Ohio-3783.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                     CASE NO. 13-13-05

    v.

SCOTT E. NYE,                         O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 12-CR-0207

**Judgment Affirmed**

Date of Decision: September 3, 2013

APPEARANCES:

    *Lisa A. Miller* for Appellant

    *Derek W. DeVine and Heather N. Jans* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Scott E. Nye ("Nye"), appeals the February 22, 2013 judgment of the Seneca County Court of Common Pleas journalizing his conviction by a jury for one count of trespass in a habitation when a person is present or likely to be present, in violation of R.C. 2911.12(B), (E), a felony of the fourth degree, and one count of felonious assault, in violation of R.C. 2903.11(A)(2), (D)(1)(a), a felony of the second degree, and sentencing him to serve three years in prison.

{¶2} On March 2, 2012, at approximately 10:13 p.m., Lisa Robinson ("Lisa") placed a 9-1-1 call requesting an ambulance come to her home at 205 Elm Avenue in Tiffin, Ohio. Lisa stated that "some random" man came to her door, attacked her fiancé, and "busted his head with a pipe." (State's Exhibit 1). She further elaborated that her fiancé was bleeding badly, with blood streaming down his face. Lisa explained that she did not know the man, but was able to give the dispatcher a physical description of him, including what he was wearing. She also informed the dispatcher that she obtained a description of the suspect's vehicle and the license plate number along with the weapon used to assault her fiancé.

{¶3} Officers Brent Riley and Jacob DeMonte responded to the call and identified the victim as Francis Shawn Brickner ("Shawn"). Officer Riley observed Shawn to be suffering from a head wound, which was producing a large

2

amount of blood. Officer Riley took photographs of Shawn's injuries prior to Shawn being transported to the hospital. He also located the weapon used to assault Shawn and identified it as a torque wrench. The torque wrench was covered with blood and hair. Shawn gave a description of the assailant and his vehicle consistent with the one given by Lisa to the dispatcher. Based on this information, Officer Riley was able to identify the defendant, Nye, as a possible suspect. Shawn and his friend John Robertson ("John"), who was also at the house that night, both identified Nye in a photo line-up.

{¶4} Officers Riley and DeMonte learned from their investigation at the scene that a woman named Randi Roush ("Randi") was with Nye that night. Specifically, the officers were told that when Nye confronted Shawn at his back door, he demanded to speak to a woman named Randi or Mandy. Officer Riley, along with Officer Jacob DeMonte, located Randi and interviewed her. Randi took Officer Riley back to the scene and explained that Nye drove her to the location and gave her $450.00 to purchase some Marijuana. The officers learned that there are two residences on the property, the one where Lisa and Shawn lived, and a "rear" residence behind their house. Randi informed the officers that she was in the rear residence that night. Randi also explained that, due to complications with the drug transaction, she still had Nye's $450.00 in her possession, which the officers confiscated.

{¶5} Law enforcement was unable to immediately locate Nye. However, Officer Joseph O'Connor was able to locate Nye's vehicle and had it towed to the police department garage. Officer O'Connor observed blood stains on the driver seat and passenger seat. He also located a small tool box in the center passenger seat section of the vehicle. Photographs taken from inside the vehicle also showed blood on the roof and visors above the driver seat and passenger seat, blood on the steering wheel and steering column, blood on the floor throughout the front compartment, and blood on the radio and temperature controls.

{¶6} Several days after the incident, Nye turned himself into law enforcement. After further investigation, Nye was indicted on one count of trespass in a habitation when a person is present or likely to be present, and one count of felonious assault with a deadly weapon. Nye pleaded not guilty to the charges. The case proceeded to a jury trial, where several witnesses testified. The following is a summary of the testimony presented at trial, which further elaborates on the events that transpired that night.

{¶7} The victim, Shawn Brickner, testified for the prosecution. Specifically, he testified that on the night of March 2, 2012, he was playing pool in his basement with Lisa and John, when he heard a very loud pounding on the door. Shawn ran upstairs to see who was at the door and encountered Nye, a man whom he had never seen before. Shawn immediately noticed that Nye was in a panic.

Shawn cracked open the storm door to talk to Nye and then Nye attempted to step into Shawn's home, yelling a woman's name and demanding his money.

**{¶8}** Shawn reacted by shoving Nye back out the door, but Nye was persistent in trying to enter the home. Shawn told Nye that he had no idea who this woman was and told him to leave, but Nye was adamant about getting into the house. Shawn stated that he then grabbed Nye by the arm and shirt collar, and escorted him to his vehicle, which was parked in the alley behind the property approximately fifteen yards from the home. Shawn claimed he did not punch or hit Nye as they walked to the back of the property. Shawn described Nye as continuously "rubbernecking" over his shoulder and trying to turn around to go back to the residence, convinced that the woman he was looking for and his money were in Shawn's home. Shawn explained that he felt it was necessary to escort Nye to his vehicle, because he believed that if he let Nye go, Nye would simply attempt to run back to his door.

**{¶9}** When they reached Nye's vehicle, Shawn opened the door and pushed Nye into the driver seat. At this point, Shawn released his grip on Nye believing that Nye would start his vehicle and leave the property. However, as Shawn began to close the door, Nye pushed the door open and lunged at him, still convinced that he needed to get inside Shawn's home. Shawn was able to push Nye back into the seat and tried to control his movements. Shawn stated that he

5

then heard John's voice yelling "Shawn! Shawn! I'm here! Let him go." Shawn now believed that if he let go of Nye, Nye would leave the property. However, Shawn noticed Nye abruptly sit back into his seat and move his hand down to grab something shiny. Shawn then observed a long metal object emerge from the car, which Nye used to hit him on the bridge of the nose.

{¶10} Shawn explained that when he was first hit with the torque wrench he was standing outside Nye's vehicle, thinking that Nye was going to close the door and leave. Being afraid of getting hit again, Shawn attempted to grab the torque wrench from Nye while Nye repeatedly struck him in the head with the wrench. Much of the subsequent struggle involving the torque wrench occurred inside Nye's vehicle. Eventually, Shawn was able to get the wrench away from Nye and threw it into the yard. Nye then started his vehicle and screeched the tires as he fled the scene. Shawn stated that multiple staples were put into his head as a result of the injuries he sustained from the altercation.

{¶11} On cross-examination, Shawn explained that there is a second residence on the property that looks like a garage, where two younger adults lived at the time. However, other than the occasional "hello," Shawn was unacquainted with the residents.

{¶12} John also testified for the prosecution and recalled what he observed that night. John stated that he was in the basement playing pool with Lisa and

Shawn when they heard the screen door make a loud noise as if the wind had blown it open. Shawn went upstairs to investigate. John heard some commotion and then Lisa came down to the basement and stated that someone was trying to get into the back door. John heard Shawn say "Get out of the house. Get off the property." (Tr. at 166).

{¶13} John went upstairs to see what was happening. When he got to the back door, John observed Shawn walking down the sidewalk with Nye, telling Nye to get off the property. John stated that Shawn was not pushing or hitting Nye as he escorted Nye to his vehicle. Shortly after Nye reached his vehicle, John recalled Nye stating to Shawn, "I got something for you, mother fucker" and then Nye pulled out a metal bar and started swinging. (Id.). John explained that after Nye struck Shawn with the weapon a few times, John tried to grab the wrench from Nye but was unsuccessful. John recalled that Nye had Shawn in a headlock inside the van while he was hitting Shawn with the wrench. John then ran around to the passenger side of the vehicle and took Nye's keys. He explained he told Nye that he would not give him the keys back until Nye dropped the wrench. Nye then dropped the wrench and John dropped the keys on the floor board. John stated that Nye then let Shawn go, Shawn exited the van, and Nye picked up the keys and fled the scene. John stated that during the incident he also heard Nye calling out a woman's name, Randi or Brandie.

7

{¶14} Lisa also provided testimony for the prosecution. On the night in question, Lisa stated she was in the basement of her home with Shawn and John when they heard a loud pounding at the door. Lisa was standing at the bottom of the stairs when she saw Shawn open the door. Lisa climbed up a few steps to get a closer view and saw Nye take a step into the house. Lisa described Nye as "furious" and remembered him saying "she's in your house. I know she's in your house. She has my money." (Tr. at 186). Lisa stated that Nye was in Shawn's face repeating himself about the woman and his money and was persistent about trying to get into the house to look for the woman. She recalled Shawn being shocked and scared by the situation. Lisa then witnessed Shawn push Nye back across the breezeway.

{¶15} Lisa observed Shawn escort Nye to his vehicle. Once they reached the vehicle, Lisa witnessed an altercation occur between Shawn and Nye in which they appeared to be wrestling each other and Shawn's arms were up as if he was blocking something. When the struggle ended, Shawn emerged with his face covered in blood. Lisa called the police and Nye left the scene in his vehicle. Lisa recalled that after Nye left, a woman named Randi or Brandi appeared. Lisa had never seen this woman before. Lisa stated that she and Shawn then returned to their home to wait for the ambulance to arrive.

{¶16} Randi Roush also testified for the prosecution. She testified that Nye drove her to 205 Elm Avenue in Tiffin to purchase some Marijuana from some people she knew who lived in the rear residence on the property. Nye remained in the car while she completed the transaction. Randi returned to the vehicle with the drugs. However, Nye did not approve of the quality of the Marijuana and told her to get his money back. Randi went back into the rear residence to get Nye's money back and engaged in a conversation with the residents. During this time, she received two phone calls from Nye. The first call she missed, but the second call she answered and Nye indicated that he wanted to leave. Randi stated she then left the rear residence and walked toward Nye's vehicle. There, she saw two people, a man and a woman, standing by the vehicle. She approached the vehicle and opened the passenger side door. There, she observed blood inside the vehicle and saw Shawn holding Nye's head between the driver seat and passenger seat, trying to calm Nye down. Randi testified that she heard Lisa call the police and then John told her to leave because she was not involved in the altercation.

{¶17} Nye testified in his defense. He stated that he felt Randi was gone "a good ten or fifteen minutes" when she went back into the house for a second time to get his money. (Tr. at 306). He testified that he was worried about Randi so he decided to go to the house to get her. He knocked on the door and Shawn

9

answered. Nye stated that Shawn was immediately confrontational with him. Nye denied stepping into the house. He claimed that he turned around to leave after Shawn told him he did not know Randi. Nye stated that Shawn then proceeded to shove him from behind all the way to his vehicle.

{¶18} Nye testified that once they reached his vehicle, Shawn told him that he needed to leave. Nye responded that he did not intend to leave the property because he was going to wait for Randi. Nye claimed Shawn shoved him again. Nye stated that he grabbed the wrench and warned Shawn that if he touched him again, he was going to hit Shawn with the wrench. Nye admitted on the stand that he kept the wrench in his vehicle as a weapon in case someone attacked him. Nye claimed Shawn then tackled him into the vehicle and he swung the wrench at Shawn, but missed. Notably, the prosecution presented the testimony of a law enforcement officer who indicated that Nye stated in an interview that he first swung at Shawn when Shawn was standing outside the vehicle. Nye further testified he was on his back in the vehicle as Shawn was punching him. Nye then started hitting Shawn with the wrench. Nye recalled Shawn telling him that he was not going to let go of him until Nye released the wrench. Nye remembered seeing Randi while Shawn was on top of him. He also recalled that at one point John had grabbed ahold of his keys and told him to drop the wrench if he wanted

his keys back. Once Nye dropped the wrench, John gave him his keys and Nye left the scene.

{¶19} The jury deliberated after hearing the evidence. The jury was instructed on the affirmative defense of self-defense—specifically pertaining to Nye's version of the events. The jury was also instructed that Nye had no duty to retreat once inside his vehicle. However, the trial court did not instruct the jury on the presumption of self-defense contained in R.C. 2901.05(B)(1), Ohio's codified version of the "Castle Doctrine," which would have required the prosecution to demonstrate by a preponderance of the evidence that Nye did not act in self-defense.

{¶20} The jury subsequently returned verdicts of guilty on both charges, finding that Nye did not prove by a preponderance of the evidence that he acted in self-defense that night.

{¶21} The trial court sentenced Nye to serve twelve months in prison for his conviction on count one, trespass in a habitation, and three years in prison for his conviction on count two, felonious assault. The trial court ordered the sentences to run concurrently for a total stated prison term of three years.

{¶22} Nye now appeals asserting, the following assignments of error.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED WHEN IT FAILED TO PROVIDE THE JURY WITH A PROPER INSTRUCTION IN**

**ACCORDANCE WITH R.C. 2901.05(B)(1) DENYING THE DEFENDANT-APPELLANT DUE PROCESS OF LAW PURSUANT TO THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE 1 OF THE OHIO CONSTITUTION.**

### ASSIGNMENT OF ERROR NO. II

**THE CONVICTION OF DEFENDANT-APPELLANT BY THE JURY SHOULD BE REVERSED BECAUSE IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN FINDING THE DEFENDANT-APPELLANT GUILTY OF THE CRIME OF FELONIOUS ASSAULT (COUNT TWO OF THE INDICTMENT), IN VIOLATION OF R.C. § 2903.11(A)(2), (D)(1)(A).**

*First Assignment of Error*

**{¶23}** In his first assignment of error, Nye contends that the trial court failed to properly instruct the jury on self-defense. Specifically, Nye argues that the trial court erred when it failed to give an instruction on the rebuttable presumption of self-defense contained in R.C. 2901.05(B)(1).

**{¶24}** At the outset, we note that there is some discrepancy on appeal regarding the appropriate standard of review for this issue. The prosecution argues that we should review this assignment of error under the plain error standard because Nye did not object at trial to the trial court's failure to give a specific instruction on the presumption of self-defense. *See* Crim.R. 30(A)(stating that "[o]n appeal, a party may not assign as error the giving or failure to give any instructions unless the party objects before the jury retires to consider its verdict *

12

* *"). However, Nye maintains that he preserved this issue for appeal because prior to trial he submitted proposed jury instructions which included the statutory language regarding the presumption of self-defense stated in R.C. 2901.05(B)(1). Therefore, Nye argues that this Court should review this issue for an abuse of discretion. *See State v. Wolons*, 44 Ohio St.3d 64, 68 (1989).

{¶25} Notably, in construing Crim.R. 30(A), the Supreme Court of Ohio has held that "[a] party does not waive his objections to the court's charge by failing to formally object thereto (1) where the record affirmatively shows that a trial court has been fully apprised of the correct law governing a material issue in dispute, and (2) the requesting party has been unsuccessful in obtaining the inclusion of that law in the trial court's charge to the jury." *State v. Wolons*, 44 Ohio St.3d at paragraph one of the syllabus (1989); *see*, *also*, *State v. Fine*, 2d Dist. Miami No. 09CA00032, 2010-Ohio-2637, ¶ 21 (finding that submitting proposed jury instructions preserved the issue for appeal and stating that the purpose of the Crim.R. 30(A) requirement that the party object to a jury instruction before the jury retires to consider its verdict is to give the trial court an opportunity to correct an erroneous instruction before the jury begins its deliberations on the instructions the court gave).

{¶26} We concur with the foregoing authority and conclude that in this instance Nye preserved the issue for appeal when he submitted proposed jury

instructions to the trial court which included the presumption of self-defense contained in R.C. 2901.05(B)(1). However, even if we were to conclude that Nye failed to preserve this issue for appeal, our analysis of this case would be the same.

**{¶27}** The trial court provided the following instruction to the jury regarding the affirmative defense of self-defense.

### SELF DEFENSE

**The defendant claims to have acted in self-defense. To establish a claim of self-defense, the defendant must prove by the greater weight of the evidence that**
**(A)—he was not at fault in creating the situation giving rise to felonious assault; and**
**(B)—he had reasonable grounds to believe and an honest belief, even if mistaken, that he was in imminent danger of death or great bodily harm, and that his only reasonable means of retreat or escape from such danger was by the use of deadly force; and**
**(C)—he had not violated any duty to retreat or escape to avoid the danger.**

**\* \* \***

### DEFENSE OF VEHICLE

**A person who lawfully is an occupant of his vehicle has no duty to retreat before using force in self-defense.**

(Jury Instructions pp. 8-9).

**{¶28}** In rendering its verdict, the jury specifically found that Nye failed to prove by a preponderance of the evidence that his conduct that night met the elements of self-defense. Nevertheless, Nye maintains that the outcome of the

14

trial would have been different if the jury was instructed on the presumption of self-defense contained in R.C. 2901.05(B)(1), which states in pertinent part:

> **[A] person is presumed to have acted in self-defense or defense of another when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force.**

Nye argues that the presumption of self-defense stated above is applicable to his case because the felonious assault took place inside his vehicle. Nye further argues that Shawn was without privilege to enter his vehicle. In making this argument, it is apparent that Nye misconstrues the circumstances entitling a defendant to the presumption of self-defense.

{¶29} Specifically, R.C. 2901.05(B)(1) clearly contemplates a scenario of a home/car invasion—i.e., the person against whom the defensive force is used is in the process of unlawfully and without privilege entering (or has entered) the defendant's residence or vehicle. The evidence in this case does not establish that Shawn was in the process of invading Nye's vehicle when Nye assaulted him with the torque wrench. Nye never testified that he struck Shawn with the wrench because Shawn was attempting to enter his vehicle. Rather, Nye claimed his reason for hitting Shawn with the wrench was because he wanted Shawn to leave him alone. Nye testified that immediately prior to hitting Shawn with the wrench

he told Shawn that he was not leaving the property without Randi. The testimony from multiple witnesses, including Nye's admission to law enforcement, demonstrated that Nye first struck Shawn with the wrench while Shawn was standing *outside* the vehicle. This is also consistent with Shawn's testimony that Nye did not use defensive force to deter him from entering the vehicle. On the contrary, the evidence demonstrates that Nye's use of force was inflicted with the purpose to remove Shawn as an obstacle in preventing him from gaining access to Shawn's home. Thus, the facts of this case fail to establish that the home/vehicle invasion scenario described in R.C. 2901.05(B)(1) occurred for the presumption of self-defense to apply.

{¶30} Even assuming *arguendo* that the facts of this case implicated the presumption of self-defense contained in R.C. 2901.05(B)(1) and that the burden had been shifted to the prosecution to prove Nye did not act in self-defense, the record shows that the prosecution presented evidence to adequately rebut the presumption by a preponderance of the evidence. *See* R.C. 2901.05(B)(3). Ohio appellate courts, including this one, have stated that the presumption of self-defense may be rebutted by evidence showing the defendant's conduct in the affray did not meet the elements of self-defense. *See e.g., State v. Hadley*, 3d Dist. Marion No. 9–11–30, 2013-Ohio-1942, ¶ 61; *State v. Petrone*, 5th Dist. Stark No. 2011CA00067, 2012–Ohio–911, ¶ 73.

16

{¶31} Referring back to the elements of self-defense as properly given in the trial court's jury instructions, the prosecution's evidence demonstrated that Nye's conduct did not meet the elements of self-defense. First, the prosecution presented evidence that Nye was at fault in creating the situation giving rise to the felonious assault. Multiple witnesses testified to Nye's persistence in getting into Shawn and Lisa's home, which sparked the incident leading to the altercation at Nye's vehicle. Shawn testified he believed that if he had not escorted Nye off the property and then physically restrained Nye from leaving his vehicle, Nye would have again attempted to enter his home.

{¶32} Second, the prosecution also demonstrated that Nye did not have reasonable grounds to believe he was in imminent danger of death or great bodily harm and that his only reasonable response was the use of deadly force. Nye admitted that Shawn did not have a weapon. He also testified that Shawn told him that he would let him go if Nye dropped the wrench. However, it was not until John appeared on the scene and took Nye's keys that Nye finally dropped the wrench and the struggle ended. This is consistent with Shawn's testimony that he did not engage in the physical struggle with Nye until after Nye struck him with the wrench while he was standing outside the vehicle. It was at that point the struggle extended into Nye's vehicle as Shawn, who feared for his life, attempted to wrestle the wrench away from Nye.

{¶33} Given the evidence presented at trial, we believe that the outcome would not have been different if the burden was shifted to the prosecution to prove by a preponderance of the evidence that Nye's conduct did not meet the elements of self-defense. Therefore, based on the facts and circumstances of this case, we conclude that the trial court did not err in declining to give an instruction on the presumption of self-defense to the jury. Accordingly, Nye's first assignment of error is overruled.

### Second Assignment of Error

{¶34} In his second assignment of error, Nye argues that the jury verdict convicting him of felonious assault was against the manifest weight of the evidence.

{¶35} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, " '[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered .' " *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact

appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

**{¶36}** Nye was convicted of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree. Specifically, R.C. 2903.11(A)(2) states in pertinent part:

> **(A)  No person shall knowingly do either of the following:**
>
> **\* \* \***
>
> **(2) Cause or attempt to cause physical harm to another \* \* \* by means of a deadly weapon or dangerous ordnance.**

**{¶37}** On appeal, Nye contends that the jury verdict was against the manifest weight of the evidence because he acted in self-defense when he repeatedly struck Shawn in the head with the torque wrench.

**{¶38}** At trial, Nye testified in his defense and presented his version of the events to support his claim of self-defense. As the trier of fact, the jury was charged with determining the credibility of the witnesses and resolving any conflicting testimony. In the end, the jury chose to believe the prosecution's witnesses over Nye and specifically found that Nye failed to demonstrate by a preponderance of the evidence that he acted in self-defense when he assaulted Shawn with the torque wrench. Moreover, as previously discussed, Nye has also failed to demonstrate that the outcome of the trial would have been different had the jury been instructed to presume he acted in self-defense because the

prosecution presented ample evidence to rebut the presumption by a preponderance of the evidence. Finally, we also note that the prosecution presented evidence more than adequate to prove the elements of felonious assault beyond a reasonable doubt. Accordingly, we cannot find that the jury clearly lost its way such that a new trial is warranted. Nye's second assignment of error is overruled.

{¶39} Based on the foregoing, the judgment and sentence of the Seneca County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**