[Cite as *State v. Nestingen*, 2020-Ohio-2965.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| SERENE NESTINGEN | : | Case No. 2019 CA 110 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Mansfield Municipal
                                Court, Case No. 2019CRB3347



JUDGMENT:                       Affirmed



DATE OF JUDGMENT:               May 14, 2020



APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

MICHAEL J. KEMERER                      DARIN AVERY
30 North Diamond Street                 105 Sturges Avenue
Mansfield, OH  44902                    Mansfield, OH  44903

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant, Serene Nestingen, appeals her November 21, 2019 conviction by the Mansfield Municipal Court of Richland County, Ohio.  Plaintiff-Appellee is state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On May 29, 2019, appellant was cited for assault in violation of Mansfield Codified Ordinance No. 537.03.  Said charge arose from an incident over a stray cat involving Akira Garrison.  Ms. Garrison is the friend of Somya Patterson, appellant's neighbor.  Ms. Patterson often fed the stray cats.  On the day in question, appellant had captured one of the strays and placed it in her home.  Appellant told Ms. Patterson to come get the cat.  Ms. Garrison went over to retrieve the cat.  Words were exchanged ending with appellant pushing Ms. Garrison off her porch and down the stairs.  Ms. Garrison suffered minor injuries.

{¶ 3}   A bench trial commenced on October 10, 2019.   By nunc pro tunc judgment entry filed November 21, 2019, the trial court found appellant guilty, and sentenced her to ninety days in jail, suspended in lieu of probation for one year.

{¶ 4}   Appellant filed an appeal and this matter is now before this court for consideration.   Assignments of error are as follows:

I

{¶ 5}   "THE TRIAL COURT ERRED IN DENYING MS. NESTINGEN'S CRIM. R. 29 MOTION FOR ACQUITTAL BECAUSE IN ITS CASE IN CHIEF, THE STATE DID NOT 'PROVE BEYOND A REASONABLE DOUBT THAT [MS. NESTINGEN] DID NOT USE THE FORCE IN SELF-DEFENSE, DEFENSE OF ANOTHER, OR DEFENSE OF [HER] RESIDENCE' AS R.C.2901.05(B)(1) REQUIRES."

II

{¶ 6}   "THE TRIAL COURT ERRED IN FINDING MS. NESTINGEN GUILTY OF ASSAULT BECAUSE THE STATE DID NOT 'PROVE BEYOND A REASONABLE DOUBT THAT [MS. NESTINGEN] DID NOT USE THE FORCE IN SELF-DEFENSE, DEFENSE OF ANOTHER, OR DEFENSE OF [HER] RESIDENCE' AS R.C.2901.05 REQUIRES."

III

{¶ 7}   "THE TRIAL COURT ERRED IN DECLINING TO CONSIDER WHETHER THE TRESPASSER CROSSED MS. NESTINGEN'S THRESHOLD BEFORE MS. NESTINGEN PUSHED HER OFF HER OWN PORCH."

IV

{¶ 8}   "THE TRIAL COURT ERRED BY FINDING THAT MS. NESTINGEN 'WAS LOOKING FOR A FIGHT' WHEN SHE TOOK STEPS TO AVOID CONTACT WITH THE TRESPASSER AND ENDED CONTACT ONCE SHE HAD PUSHED THE ALLEGED VICTIM OUT OF HER HOUSE AND OFF HER PORCH."

V

{¶ 9}   "THE TRIAL COURT ERRED BY FINDING THAT MS. NESTINGEN USED AN UNNECESSARY AMOUNT OF FORCE FOR THE SITUATION WHEN THE EVIDENCE SHOWED THAT SHE ONLY USED FORCE SUFFICIENT TO REMOVE THE TRESPASSER FROM HER HOUSE AND PORCH, THAT SHE CEASED TO USE ANY FORCE SUBSEQUENT TO THAT REMOVAL, AND THAT THE VICTIM SUFFERED ONLY A MINOR SCRATCH, SOME REDNESS, AND A BROKEN FINGERNAIL."

I, II

{¶ 10} In her first and second assignments of error, appellant claims the trial court erred in denying her Crim.R. 29 motion for acquittal and erred in finding her guilty of assault because the state failed to prove beyond a reasonable doubt that she did not use force in self-defense, defense of another, or defense of her residence under R.C. 2901.05(B)(1). We disagree.

{¶ 11} Crim.R. 29 governs motion for acquittal. Subsection (A) states the following:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶ 12} The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in *State v. Bridgeman,* 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus: "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

{¶ 13} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State*

*v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 14} Appellant was convicted of assault in violation of Mansfield Codified Ordinance No. 537.03(a) which states: "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

{¶ 15} In order to prove the affirmative defense of self-defense, a defendant used to have the burden of proving the affirmative defense by a preponderance of the evidence. In a case such as this one involving non-deadly force, the defendant previously was required to prove: (1) the defendant was not at fault in creating the situation giving rise to the affray, (2) the defendant had a bona fide belief, even if mistaken, that he/she was in imminent danger of any bodily harm; and (3) the only means to protect him/herself from such danger was the use of force not likely to cause death or great bodily harm. *State v. Williams,* 3d Dist. Allen No. 1-19-39, 2019-Ohio-5381, ¶ 14; *See In re J.J.,* 5th Dist. Licking No. 16 CA 44, 2016-Ohio-8567, ¶ 13.

{¶ 16} However, with the enactment of R.C. 2901.05(B)(1), effective March 28, 2019, the burden is now on the prosecution to disprove at least one of the elements of self-defense beyond a reasonable doubt. R.C. 2901.05(B)(1) states the following:

A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against

another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶ 17} Given the language of R.C. 2901.05(B)(1), the prosecution in this case was required to disprove self-defense by proving beyond a reasonable doubt that appellant (1) was at fault in creating the situation giving rise to the affray, or (2) did not have a bona fide belief, even if mistaken, that she was in imminent danger of any bodily harm, or (3) the only means to protect herself was the use of force not likely to cause death or great bodily harm.

{¶ 18} Ms. Garrison testified she and Ms. Patterson pulled up to Ms. Patterson's home which was next door to appellant's home. T. at 27. Appellant exited her home and yelled at Ms. Patterson to come get her cat. *Id.* Appellant was yelling and cussing, and threatened to "beat her ass." T. at 28. Ms. Garrison decided to go over and retrieve the cat to "just tamp down the situation." T. at 29. She knocked on appellant's door and appellant looked at her through the door's window and closed the curtain. T. at 29-30. Ms. Garrison knocked again. T. at 30. Appellant opened the door, yelled at her that she had called the sheriff, and slammed the door in her face. *Id.* Again, Ms. Garrison knocked on the door. *Id.* Appellant "opens up the door and she starts going off on me, starts cussing me out, and all of a sudden I'm just, like, whoa, you know, like, whatever." *Id.* She attempted to ask where the cat was when appellant grabbed her

and yelled at her to get out of her house. *Id.* Ms. Garrison told her she was not even in her house. T. at 30-31. Appellant then pushed her and as Ms. Garrison turned to leave, appellant pushed her again, pushing her off the porch and down the stairs. T. at 31. Ms. Garrison testified if she had not caught herself, she would have fallen on her face. *Id.* Ms. Garrison had a scratch on her neck, red marks on her chest, and sustained a broken fingernail. T. at 31-32. She testified she was never in appellant's home. T. at 41.

{¶ 19} Ms. Patterson testified appellant told her to come get her cat. T. at 9. Both Ms. Patterson and her mother, Chasity Patterson, testified Ms. Garrison was at the door knocking when appellant opened the door, yelled, and pushed her off the porch and down the steps. T. at 11, 16, 21, 24-25.

{¶ 20} Deputy Dog Warden Kaden Proper testified on the day in question, appellant called him to report the stray cat belonging to her neighbor. T. at 43-44. She stated the cat was in a carrier on her porch. T. at 44. Warden Proper asked her if it would be okay if the carrier remained on her porch and he would contact the neighbor to retrieve the cat without any interaction. T. at 45. She agreed. *Id.* He contacted the neighbor and "last I was told was the cat would be picked up and there was to be no interaction." T. at 46.

{¶ 21} Mansfield Police Officer James Reed responded to the incident of "a neighborly dispute." T. at 50. He spoke with Ms. Garrison and observed "[r]ed markings on her chest area, neck," and a broken fingernail. T. at 51; State's Exhibits 1-5. He also spoke to appellant who told him after she opened her door, Ms. Garrison entered her home. T. at 52-53. She yelled at Ms. Garrison to leave and pushed her out

of her home and continued pushing her until she went off the porch.  T. at 53.  Appellant did not report that Ms. Garrison had threatened her.  *Id.*

{¶ 22} At the close of the state's case-in-chief, appellant moved for a Crim.R. 29 motion, arguing the state "did not present proof beyond a reasonable doubt that that was not - - the defense of the use of force by defendant was not in defense of her residence."  T. at 58-59.  The trial court denied the motion, noting "three witnesses testified that she did not enter the house and that she knocked on the door twice."  T. at 59.

{¶ 23} Upon review, we concur with the trial court and find sufficient evidence was presented to overcome the Crim.R. 29 challenge.

{¶ 24} Appellant testified she knew Ms. Garrison as "a friend or maybe a family member" of her neighbor.  T. at 78.  She observed Ms. Patterson and Ms. Garrison pull up in a car next door and watch "their animals come in and out of my home and in my yard and so I told them that I had called the warden and that the warden was going to be coming over there."  T. at 74-75.  Appellant explained Ms. Garrison came to her door and because she did not live next door and did not have anything to do with the cat situation, appellant closed the curtain on the door's window and walked away.  T. at 75.  Ms. Garrison "starts pounding" on the door so appellant opened the door, told her the deputy was on the way, "and this time I slammed the door.  As soon as I slammed the door, it came flying right back in and I don't know if she kicked it or shoved it, but it came in so forcefully at me that it could have knocked me or my children out."  *Id.*  Appellant testified Ms. Garrison came through the entryway with her fist up, yelling, and calling her "a bitch."  T. at 75-76.  Ms. Garrison was about three feet into the home.  T. at 82.  "The only way I can keep her from assaulting me was to push her out the door

and down the stairs." T. at 76. Ms. Garrison "comes at me with her fist, like she is going to attack me" so "I grabbed her shoulders and spun her around and sent her right back out the door." T. at 82. Appellant then walked back inside and closed the door. T. at 86. She called the police to "let them know that I had been attacked, that this girl had kicked my door and forced it in and come at me." T. at 76. Defendant's Exhibits B and C show the cat carrier on the floor a few feet from the doorway.

{¶ 25} Both appellant's boyfriend, James Wininger, and daughter, Kadence Nestingen, testified Ms. Garrison "kicked the door and came in to our house." T. at 61-62, 69. Mr. Wininger testified she either "kicked or hit open the door" because he did not actually see what she did. T. at 69, 71. "[T]he door flew open and then she came inside the house and was going straight at" appellant. T. at 69. Then appellant put her hands up, turned Ms. Garrison around and pushed her out the door and down the stairs. T. at 61-62, 69. Ms. Garrison was about two to three feet inside the home and advancing toward appellant, calling her "a bitch." T. at 64, 71-72.

{¶ 26} On rebuttal, Officer Reed testified he did not see any evidence of footprints or damage to appellant's door consistent with it having been kicked in. T. at 89. Appellant testified the door was old and would only lock properly with the dead bolt engaged so anybody could have kicked it in. T. at 75, 81. Officer Reed confirmed the door could be opened with just a push. T. at 90. He testified on the day of the incident, appellant had told him Ms. Garrison entered the home with a clenched fist, not a raised fist, and had a threatening manner. T. at 89. When asked by Officer Reed if Ms. Garrison "tried to swing or anything like that," appellant responded in the negative. T. at 91.

{¶ 27} The trial court found appellant guilty, stating the following (T. at 98-99):

Akira admitted that she told her to leave the house. Akira said, I looked down and my feet were still on the porch. Whether or not she got a foot in that house or not, the force used was unnecessary for the situation.

She engaged in the first discussions amongst the two sides. She was calling names. She was using profanity across the board. The prosecutor is right, she was looking for a fight.

Akira tried to be a neutral party to go get the cat, which is what you claimed you wanted done. But no one gave the cat to Akira when she came asking for it. You know Akira was next door with them. You know she was a friend. Obviously there was no serious damage done, but there was scrapes and scratches.

Another thing I found peculiar, I believe the defendant she gave her one push and she went from being inside the house three feet to clear across the porch to down the steps, barely able to catch herself from falling.

Akira's position that she was shoved twice is much more tenable than the defendant's.

{¶ 28} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶ 29} Based on the trial court's statements, the trial court found appellant's actions did not warrant self-defense. Appellant admitted that she first spoke to the young women. Appellant stated she told them that she had called the warden and the warden was going to be coming over there, and Ms. Garrison and Ms. Patterson stated she yelled at them to come get the cat. Everyone can agree Ms. Garrison knocked on the door. Instead of opening the door and giving Ms. Garrison the cat, appellant informed her that a deputy was on the way and then slammed the door in her face. Even assuming as true that Ms. Garrison entered the home by three feet, appellant could have handed Ms. Garrison the carrier containing the cat that was very near the doorway. She chose not to do so. Instead, appellant placed her hands on Ms. Garrison and pushed her through the threshold, across the porch, and down the steps. The evidence supports the fact that appellant escalated the situation "giving rise to the affray."

{¶ 30} We find the state presented sufficient evidence to disprove self-defense.

{¶ 31} Upon review, we find sufficient evidence, if believed, to support the conviction of assault.

{¶ 32} Assignments of Error I and II are denied.

III

{¶ 33} In her third assignment of error, appellant claims the trial court erred in declining to consider whether Ms. Garrison crossed the threshold into her home because R.C. 2901.05(B)(2) would have created the presumption of self-defense. We disagree.

{¶ 34} R.C. 2901.05(B)(2) states the following:

Subject to division (B)(3) of this section, a person is presumed to have acted in self-defense or defense of another when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force.

{¶ 35} Subsection (B)(4) states: "The presumption set forth in division (B)(2) of this section is a rebuttable presumption and may be rebutted by a preponderance of the evidence, provided that the prosecution's burden of proof remains proof beyond a reasonable doubt as described in divisions (A) and (B)(1) of this section."

{¶ 36} "In this respect, Ohio appellate courts have held that 'the presumption of self-defense may be rebutted by evidence showing the defendant's conduct in the affray did not meet the elements of self-defense.' " *State v. Kean,* 10th Dist. Franklin No. 17AP-427, 2019-Ohio-1171, ¶ 48, quoting *State v. Nye*, 3d Dist. No. 13-13-05, 997 N.E.2d 552, 2013-Ohio-3783, ¶ 30.

{¶ 37} As the testimony cited above established, if believed by the trier of fact, appellant escalated the situation "giving rise to the affray." Therefore, the prosecution presented sufficient evidence to rebut the presumption of self-defense afforded under R.C. 2901.05(B)(2).

{¶ 38} Assignment of Error III is denied.

IV, V

{¶ 39} In her fourth and fifth assignments of error, appellant claims the trial court erred in finding appellant "was looking for a fight" and used unnecessary force for the situation. We disagree.

{¶ 40} Appellant appears to be arguing that the findings are against the manifest weight of the evidence. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also, State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 41} As outlined above, evidence was presented to establish that appellant's actions escalated the incident. Appellant spoke to the young women first, either telling them the warden was on his way or yelling at them to come get the cat. When Ms. Garrison went over to retrieve the cat, instead of opening the door and handing over the cat which was a few feet from the door, appellant informed her that a deputy was on the way and slammed the door in her face.

{¶ 42} After the door opened again, instead of handing over the cat, appellant placed her hands on Ms. Garrison and pushed her. Ms. Garrison testified after the push, she turned to leave and appellant pushed her again, pushing her off the porch and down the stairs. If she had not caught herself, she would have fallen on her face.

{¶ 43} As noted above, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *Jamison, supra.*

{¶ 44} It was within the trial court's province, as the trier of fact, to find that appellant "was looking for a fight" and the force used was unnecessary for the situation.

{¶ 45} Upon review, we do not find that the trial court lost its way. We do not find any manifest miscarriage of justice.

{¶ 46} Assignments of Error IV and V are denied.

{¶ 47} The judgment of the Mansfield Municipal Court of Richland County, Ohio is hereby affirmed.

By Wise, Earle, J.

Wise, John, P.J. and

Baldwin, J. concur.


EEW/db