[Cite as *State v. Ellis*, 2021-Ohio-1297.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                    :

    Plaintiff-Appellee,            :

                     No. 109408

          v.                                  :

MAURICE ELLIS,                   :

    Defendant-Appellant.          :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:**  April 15, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-639741-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory Mussman, Assistant Prosecuting Attorney, *for appellee.*

Stephen L. Miles, *for appellant.*

---

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Appellant Maurice Ellis appeals his convictions for murder, involuntary manslaughter, two counts of felonious assault, and tampering with evidence.  Because the trial court correctly instructed the jury and provided a verdict

form that complied with the requirements of law, Ellis did not suffer ineffective assistance of counsel. Further, the convictions were not against the manifest weight of the evidence and we affirm the judgment of the trial court.

I.      PROCEDURAL HISTORY AND FACTS

{¶ 2} At trial, the state presented evidence that on December 20, 2018, the Cleveland Police Department responded to a multifamily home on Empire Avenue. Sgt. Jose Torres testified he was the supervisor on scene, arriving at approximately 8:30 p.m. He said that other officers were on scene and Cleveland Emergency Medical Services and the Cleveland Fire Department were assisting the stabbed individual. During Sgt. Torres's testimony, the 911 call was played, on which the 911 caller was heard to say that a person had been stabbed. The caller said that he awoke to a man choking him, that he stabbed his attacker, but when asked, refused to identify himself. The caller said he was not waiting for anyone to come and "jump" him and then hung up.

{¶ 3} Cleveland Police Officer Brian Sabolik testified that he and Officer O'Donnell were the first to respond to Empire Avenue. He wore a body camera, and video from that night was played. The recording showed him and his partner enter the unlocked door to the third-floor apartment where they found a body lying on the living room floor. The body was later identified as George Linson, who was taken to the hospital. Cleveland Police Department Det. Walter Emerick testified that as a member of the crime-scene unit, he noted no damage to the first-floor or third-floor-

apartment doors.  He photographed the scene, noting blood splatter and a pool of blood were located in the northwest corner of the living room.

{¶ 4} At the scene, officers spoke with Carole Hunter, the first-floor resident of the premises.  She testified at trial that she told police that Ellis lived with Deborah LaTanya Simmons on the third floor.  She testified that Mr. Linson, Ms. Simmons, and Ellis frequently spent time together and that she had not seen Ellis at the residence since Mr. Linson's death.

{¶ 5} A week after the killing, on December 27, 2018, Cleveland Police Detective Thelemon Powell testified that he was able to interview Ms. Simmons and played the 911 call to her.  She identified the caller, and police obtained an arrest warrant for Ellis.  He said both the Cleveland Police Department and the Cuyahoga County Sheriff's Office were actively trying to locate Ms. Simmons at the time of the trial.

{¶ 6} Beverly Reed, Ellis's cousin and co-worker, testified that on the night of Mr. Linson's death, Ellis came to her house between 9:00 p.m. and 10:30 p.m. while she getting ready for work, which was unusual because she normally picks Ellis up for work.  When he arrived, he was frightened and shaken and said he was in a fight with his girlfriend.  Ellis told her that his girlfriend made him give her the keys to the home and that after the argument, he went to sleep and woke with Mr. Linson standing over him and choking him.  He said they were fighting, that he picked up a knife, and that he stabbed Mr. Linson.  He told Ms. Reed he called the police.  Ms. Reed said that she and Ellis went to work and that he worked a few more nights after

that. Ms. Reed testified that they found out Mr. Linson died when they were watching the news the next day. After a while, she said U.S. Marshalls came to her house looking for Ellis, but she did not have any contact with him and did not know where he could be found.

{¶ 7} Cleveland Police Det. Robert Ford testified he was assigned to the homicide case. He established who lived at the residence and attempted to locate and interview the residents. He learned Ellis and Deborah Simmons lived in the third-floor apartment and that Ms. Simmons was not present at the time of the stabbing. He determined Ellis made the 911 call. He obtained an arrest warrant for Ellis on January 2, 2019.

{¶ 8} On May 3, 2019, Ellis was arrested by the U.S. Marshalls. On May 4, 2019, Det. Ford interviewed Ellis. Ellis told him that after stabbing Mr. Linson, he dumped the knife in the garbage can outside the garage. He stated he woke to being attacked, but later stated that he woke Mr. Linson up. He admitted he had gotten into several physical altercations in the past with Mr. Linson, but said he would just walk away every time. As to the fights with Mr. Linson, he described himself as a "ticking time bomb."

{¶ 9} Forensic Scientist Daniel Mabel of the Cuyahoga County Medical Examiner's Office examined Mr. Linson's body. He swabbed Mr. Linson's fingernails for potential DNA and submitted those swabs for testing. He testified that trace metal tests of Mr. Linson's hands were negative. He examined and photographed Mr. Linson's clothes. DNA analyst Lisa Moore of the Cuyahoga

County Medical Examiner's Office testified that Mr. Linson's DNA was found in a mixture of DNA from the interior door handle of the 3rd floor apartment. The blood found in the living room matched Mr. Linson's.

{¶ 10} Dr. Joseph Felo, the chief deputy medical examiner in the Cuyahoga County Medical Examiner's office testified that he conducted the autopsy of Mr. Linson and determined Mr. Linson died as a result of a stab wound to his left lung and heart. Dr. Felo could not provide specific details concerning the size or depth of the wound due to the intervening surgical procedures taken by medical personnel at the hospital. Dr. Felo did testify that Mr. Linson suffered a fatal stab wound that went through his lung and into his heart.

{¶ 11}Mr. Linson's body also had an abrasion on the center of his forehead caused by blunt force, fresh abrasions on the back of his head, and a cut near his upper left arm. The cut was likely caused by the cutting object grazing Mr. Linson before going into his chest. The toxicology report revealed Mr. Linson's system was positive for alcohol with a level of .21 mg/l, tobacco, and phencyclidine, a drug more commonly known as PCP. Dr. Felo testified the side effects of PCP include disassociation, depersonalization, paranoia, and/or combative or aggressive behavior.

{¶ 12} Ellis testified at trial that he woke to someone choking and beating him and he had to defend himself. He said he and his attacker wrestled into the hallway and that his attacker grabbed him by the throat and shirt. He stated he didn't know who was attacking him until Mr. Linson said, "My cousin told me what

you done to her." Ellis said Mr. Linson pushed him against the sink and that was when he grabbed a knife. He said they were "tussling" and Mr. Linson had Ellis in a bear hug around his neck. Ellis said he was yelling to be let go, but Mr. Linson refused. At that point Ellis testified, "Once we hit the living room, it's like — I don't know how to describe it — like just instantly it just changes. I said, 'George get off me, I got a knife.' And he just backs up, and he looks at me, and he just falls to the floor."

{¶ 13} Ellis said he put the knife down and noticed blood on it. He left, threw the knife into a garbage can, and went to work. He left the door unlocked so police could get in. As to his actions, Ellis testified that he did not know he stabbed Mr. Linson, but knew Mr. Linson must have been stabbed as a result of his actions.

{¶ 14} After the stabbing, Ellis did not know if Mr. Linson was dead or alive, so he called police, said what happened, and left to go to work that evening. He said after work, he went to his brother's house who lived in Shaker Square and learned Mr. Linson died. His brother told him he should call the police and turn himself in but he did not because he "wasn't feeling strong mentally."

{¶ 15} Under cross-examination, Ellis stated that he initially said he only smoked marijuana but then admitted to smoking crack cocaine with Ms. Simmons. He admitted Mr. Linson was always allowed in the house and said that on the night he killed Mr. Linson, Mr. Linson got in because he had the keys from Ms. Simmons. As to past altercations with Mr. Linson, Ellis said Mr. Linson had put his hands on him a few other times. He said Ms. Simmons had called police to make Mr. Linson

leave.  Ellis admitted that in the past when fighting with Mr. Linson, he never felt the need to stab Mr. Linson, but said he wanted to.  When asked why he did not turn himself into the police in February, March, or April, Ellis said he was "just living."  Notably during the interview with police, the 911 call, and in his trial testimony, Ellis never said he feared for his life from Mr. Linson.

{¶ 16}  After trial, Ellis was convicted of one count of murder, one count of involuntary manslaughter, two counts of felonious assault, and one count of tampering with evidence.  The trial court sentenced him to life in prison with parole eligibility after 15 years for murder and to 36 months in prison for tampering with evidence.   The trial court did not impose a sentence for the involuntary manslaughter and felonious assault convictions after determining they were allied offenses to the murder conviction.

II.     LAW AND ARGUMENT

1.     THE TRIAL COURT DID NOT COMMIT PLAIN ERROR IN THE PRESENTATION OF JURY INSTRUCTIONS

{¶ 17}  In his first assignment of error, Ellis alleges that "the trial court erred in its jury instructions regarding self-defense."  He argues the jury instructions were misleading and confusing, which amounted to plain error depriving him of a fair trial.  He does not allege error in  any particular jury instruction but argues that the order of the instructions as given by the trial court amounted to error.   Ellis acknowledges this court is to review the issue presented as being plain error because there was no objection at trial.

{¶ 18} Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Notice of plain error is to be taken only where there are exceptional circumstances and where such notice prevents a manifest miscarriage of justice. *State v. Kidd*, 8th Dist. Cuyahoga No. 109126, 2020-Ohio-4994, ¶ 30, citing *State v. Garcia-Toro*, 8th Dist. Cuyahoga No. 107940, 2019-Ohio-5336, ¶ 23. "A trial court has broad discretion to decide how to fashion jury instructions, but it must 'fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.'" *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 46, quoting *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus.

{¶ 19} Ellis alleges that the jury instructions were misleading, stating the self-defense instruction should have been given prior to the instructions on the murder, involuntary manslaughter, and felonious assault charges. Ellis cites to no specific case law to bolster his claim that the order of the jury instructions was error. We note that the jury instructions given in this case mirrored the order of instructions as presented in the Ohio Jury Instructions. *See Ohio Jury Instructions*, CR Section 503.11(A); *State v. Smith*, 3d Dist. Logan No. 8-12-05, 2013-Ohio-746, ¶ 32.

{¶ 20} After review, the jury instructions are correct statements of the law and were given in a logical manner. In considering the order of the instructions, such order could benefit a defendant, because a jury could acquit on the charge

considered without consideration of self-defense. Moreover, the trial court instructed the jury that "the instructions are to be taken or read as a whole." As such, we cannot say that the order of instruction was confusing or misleading or would rise to the level of plain error. *See, e.g., State v. Tucker*, 6th Dist. Wood No. WD-16-063, 2018-Ohio-1869, ¶ 19 ("[W]e find no plain error in the order in which the trial court instructed the jury on the definition of the word 'knowingly.' The definition was correct, and it needed to be defined in explaining to the jury the elements of the theft offense underlying the robbery charge."), *State v. Martin*, 2d Dist. Montgomery No. 27220, 2017-Ohio-7431, ¶ 43 ("The trial court made a diligent effort to provide and did provide all of the relevant instructions to the jury. * * * [W]e cannot find that the jury instructions on self-defense contained any obvious defect or affected Martin's substantial rights."), *State v. Rodvold,* 6th Dist. Huron No. H-10-012, 2012-Ohio-619, ¶ 39 (Finding order of instructions not error where court instructed jury to consider all instructions as a whole.). Ellis's first assignment of error is overruled.

2.    THE VERDICT FORM WAS PROPER UNDER OHIO LAW

{¶ 21} In his second assignment of error, Ellis asserts that "the trial court erred by giving improper verdict forms to the jurors." A verdict form must be in writing and signed by each of the jurors. R.C. 2945.171; Crim.R. 31. Further, R.C. 2945.75(A)(2) provides that a guilty verdict form "shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present." Ellis argues that verdict forms should also include a specific

finding that the jury found that the state proved beyond a reasonable doubt that Ellis did not act in self-defense.

**{¶ 22}** Ellis does not argue error in the indictment or any particular jury instruction. He only asserts that verdict forms must contain a jury's specific finding on the issue of self-defense. However, that finding is inherent in the guilty verdict. This court recently considered a similar argument in *State v. Jones*, 8th Dist. Cuyahoga No. 108371, 2020-Ohio-3367, ¶ 94, and determined Ohio law does not require the use of a separate verdict form for self-defense. In *Jones*, we further found no error in the failure of counsel to ask for separate self-defense findings on a verdict form where

> the trial court provided full and complete jury instructions on the issue of self-defense. Even without a separate verdict form on self-defense, the jury was well aware that it was free to consider the defense and to find Jones not guilty of the offenses to which the defense applied if they believed him.

*Id.* at ¶ 104.

**{¶ 23}** We see no error, plain or otherwise, in the verdict form used in this case. There is no requirement for a separate finding in trials with claims of self-defense. Other courts confronting the argument have similarly found no plain error. *See State v. Black*, 5th Dist. Stark No. 2011 CA 00175, 2012-Ohio-2874, ¶ 42; *State v. Reeds*, 11th Dist. Lake No. 2007-L-120, 2008-Ohio-1781, ¶ 62 ("While it may be argued that inclusion of a separate finding relating to self-defense would ensure clarity, in this case, we cannot rule that the absence of such is error."); *State v. Garvin*, 3d Dist. Hardin No. 6-94-6, 1994 Ohio App. LEXIS 4147 (Sept. 21, 1994)

("Regardless of the absence of any such objection, failure to include self-defense on the verdict forms does not rise to plain error.") Accordingly, we overrule Ellis's second assignment of error.

## 3. APPELLANT RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL

{¶ 24} In his third assignment of error, Ellis alleges he received ineffective assistance of counsel where his attorney should have objected to both the order of the jury instructions and the composition of the verdict forms. As we find no error in the jury instructions or verdict forms in our resolution of Ellis's first and second assignments of error, we do not find Ellis suffered ineffective assistance of counsel. *See State v. Black*, 2019-Ohio-4977, 149 N.E.3d 1132, ¶ 36 (8th Dist.) ("Consequently, we cannot find that were it not for counsel's purported errors, the result of the trial would have been different."). As such, Ellis's third assignment of error is overruled.

## 4. APPELLANT'S CONVICTIONS ARE NOT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶ 25} In his fourth assignment of error, Ellis argues his convictions for murder, involuntary manslaughter, and felonious assault are against the manifest weight of the evidence because the state failed to prove beyond a reasonable doubt that he did not act in self-defense.[1] The Ohio Supreme Court has long held:

> To establish self-defense, a defendant must prove the following elements: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona

[1] Ellis does not challenge his conviction for tampering with evidence.

fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger. *State v. Robbins* (1979), 58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E.2d 755, paragraph two of the syllabus.

*State v. Barnes*, 94 Ohio St.3d 21, 24, 2002-Ohio-68, 759 N.E.2d 1240.

{¶ 26} A person acting in self-defense must use only that force that is reasonably necessary and proportionate to the threat. *State v. Reyes-Figueroa*, 2020-Ohio-4460, 158 N.E.3d 939, ¶ 27 (8th Dist.). When lethal force is used for the purpose of self-defense, "'the perceived threat to the accused must be of death or great bodily harm.'" *State v. Darkenwald*, 8th Dist. Cuyahoga No. 83440, 2004-Ohio-2693, ¶ 57, quoting *State v. Dietz,* 8th Dist. Cuyahoga No. 81823, 2003-Ohio-3249. R.C. 2901.09(B) reads:

> For purposes of any section of the Revised Code that sets forth a criminal offense, a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence, and a person who lawfully is an occupant of that person's vehicle or who lawfully is an occupant in a vehicle owned by an immediate family member of the person has no duty to retreat before using force in self-defense or defense of another.

{¶ 27} As to the burden of proof at trial, R.C. 2901.05(B)(1) provides that where there is evidence that supports a claim of self-defense, "the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case

may be."[2]  Any presumption as to the use of force in self-defense "may be rebutted by a preponderance of the evidence, provided that the prosecution's burden of proof remains proof beyond a reasonable doubt as described in divisions (A) and (B)(1) of this section."  R.C. 2901.05(B)(4).

{¶ 28}  Evidence as to all elements of self-defense must be present at trial in order for a defendant to be acquitted, but to overcome the claim, the state need only disprove one element of the defense by proof beyond a reasonable doubt.  *See State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31; *State v. Nestingen*, 5th Dist. Richland No. 2019 CA 110, 2020-Ohio-2965, ¶ 17; *State v. Jacinto,* 2020-Ohio-3722, 155 N.E.3d 1056 (8th Dist.) ("[T]he state must disprove at least one of the elements of the use of nondeadly force in self-defense beyond a reasonable doubt * * *.").

{¶ 29}  A manifest weight challenge questions whether the state has met its burden of persuasion.  *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).  This challenge raises a factual issue:

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in

---

[2]  R.C. 2901.05(B) was amended in 2019 to shift the burden of proof at trial from requiring a defendant having to prove self-defense by a preponderance of the evidence at trial to the state to disprove self-defense beyond a reasonable doubt.  *See* Am.Sub.H.B. No. 228.

the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). The use of the word "manifest" in the standard of review "means that we can only reverse the trier of fact if its decision is very plainly or obviously contrary to the evidence." *State v. Hernandez*, 8th Dist. Cuyahoga No. 106577, 2018-Ohio-5031, ¶ 20.

{¶ 30} In this case, the state concedes that pursuant to R.C. 2901.09, Ellis would not have a duty to retreat where the force used was in his home but argues that the evidence at trial disproved his claim of self-defense. As to the first element of self-defense, Ellis argues that the state failed to prove beyond a reasonable doubt that he was at fault in creating the situation that led to George Linson's death. In support of his argument, he points to his own testimony that he was asleep and attacked in his home by Mr. Linson. However, his testimony was contradicted by his statement to the police that Mr. Linson was in the apartment and he told Mr. Linson to wake up. As to the second element of self-defense, Ellis claims that the state did not prove beyond a reasonable doubt he did not believe he was in imminent danger of death or great bodily harm from Mr. Linson. Ellis again relies on his own testimony that he was attacked in his home and argues his testimony is bolstered by the fact that Mr. Linson had PCP in his system. We are mindful that in construing evidence the jury has the ability to believe none, part, or all of any witness's testimony and to resolve any inconsistencies accordingly. *State v. Robinson*, 8th

Dist. Cuyahoga No. 105951, 2018-Ohio-2058, ¶ 22. The jury was free to believe or disbelieve Ellis's testimony as to how he and Mr. Linson engaged in a physical altercation.

{¶ 31} Ellis testified at trial that Mr. Linson had a bear hug around his neck before he grabbed a knife, but Ellis never affirmatively stated he was in fear of great bodily harm. In contrast, he testified that he fought with Mr. Linson in the past and was able to walk away from those altercations. Ellis further admitted that in the past he wanted to stab Mr. Linson, and described himself as "a ticking time bomb" when it came to Mr. Linson. There was no evidence Mr. Linson had a deadly weapon or used a weapon. And the jury was free to consider this evidence in the light of his failure to identify himself on the 911 call and his failure to contact police, being arrested months after the crime. As such, the jury could find that the use of deadly force was not reasonable given his and Mr. Linson's history and his description of the fight as "tussling." Further, the use of a knife and the force to send it through his lung and into his heart could be found to be disproportionate to the fighting that occurred.

{¶ 32} In reviewing the entirety of the evidence presented at trial, we cannot say the jury lost its way in convicting Ellis despite the claim of self-defense. Nor can we say that his convictions for murder, involuntary manslaughter, and felonious assault are a manifest miscarriage of justice. Accordingly, Ellis's fourth assignment of error is overruled.

III.   CONCLUSION

{¶ 33} The trial court did not err in instructing the jury.  The order of the presentation of instructions was logical and proper where the trial court instructed the jury first on the underlying offenses, then on the law of self-defense.  The trial court further provided proper verdict forms because there is no requirement that the verdict form contain a special finding as to self-defense.  As there was no error in the jury instructions or the verdict forms, Ellis did not suffer ineffective assistance of counsel where trial counsel did not object to either.  Finally, the convictions in this case are not against the manifest weight of the evidence.

{¶ 34} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EILEEN T. GALLAGHER, J., CONCUR